DUPONT CIRCLE CITIZENS
ASSOCIATION, Petitioner,

v.

DISTRICT OF COLUMBIA ZONING
COMMISSION, Respondent.

American Trucking Associations, Inc. and
Sophia Menatos, Intervenors.

No. 79–922.

District of Columbia Court of Appeals.

Argued Sept. 9, 1980.

Decided Jan. 5, 1981.

William J. Franklin, Washington, D. C., with whom Peter G. Flynn, Washington, D. C., and intervenor Sophia Menatos pro se, were on the brief, for petitioner.

Richard W. Barton, Deputy Corp. Counsel at the time the brief was filed and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., entered appearances on behalf of respondent and adopted the brief of intervenor American Trucking Associations, Inc.

J. Jonathan Schraub, Washington, D. C., with whom Joseph V. Gartlan, Jr., Washington, D. C., was on the brief, for intervenor American Trucking Associations, Inc.

Before KELLY, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

Petitioner, Dupont Circle Citizens Association with intervenor Sophia Menatos, seeks review of the Zoning Commission's preliminary approval of a planned unit development (PUD) which was granted pursuant to the Zoning Regulations contained in Article 75,[1] on August 9, 1979. The applicant American Trucking Associations, Inc., has intervened in support of the Commission's decision.

Petitioner advances three challenges to the action by the Commission.[2] First, it contends that the Commission failed to comply with the District of Columbia Administrative Procedure Act (DCAPA), D.C.

---

1. On February 8, 1979, the Zoning Commission adopted Order No. 251 which amended the Planned Unit Development process contained in Article 75, Paragraph 7501.92 of the new regulations, however, provides that applications already on file may be processed in accordance with the old regulations. 25 D.C.Reg. 7993 (1979). The Zoning Commission granted the applicant's request to process the application under the old regulations.

2. Petitioner originally sought to argue on behalf of two other parties, but the court, sua sponte, ordered those arguments and all references to them stricken.

Code 1978 Supp., § 1–1510(3)(D), by not requiring the applicant to show evidence that the PUD would provide buildings and facilities superior to those available under the general zoning requirements. Petitioner maintains that such a comparison is required by the Zoning Commission's regulation contained in § 7501.1 which states the purposes of a PUD, and that absent this comparison, the decision is unsupported by substantial evidence in derogation of the DCAPA, D.C.Code 1978 Supp., § 1–510(3)(E).

Petitioner's second argument is that the preliminary approval of the PUD effectively constitutes a final rezoning of the area and, therefore, the Commission was required by its own regulations, § 9101.4, and by the Zoning Act, D.C.Code 1973, § 5–415, to hold a public hearing and to provide published notice of that hearing at least thirty days in advance, such notice including a general summary of the zoning change and designation of the boundaries of the rezoned area. Petitioner contends that what notices were given for the hearing on the preliminary application were defective under Zoning Regulation § 9101.42(b).

Finally, petitioner asserts that it has suffered prejudicial harm as a result of being denied party status at two of three hearings held before preliminary approval of the PUD project.

We find that in its challenge to the Commission's decision, petitioner has misconstrued the statutory and regulatory scheme for the approval of planned unit developments and, therefore, we affirm the Commission's decision.

## I. Factual Background

The chronology of events leading to this petition is more complex than the legal principles and rules which resolve it. In January of 1978, American Trucking filed an application for a PUD on its property located in a Northwest city block bounded by 16th and 17th Streets on the east and west and P and O Streets on the north and south. The National Headquarters of American Trucking is located in an existing six-story, seventy-two foot high office building at 1616 P Street. At the time of the application the entire block was zoned SP on the east side and R–5–D on the west side which permit buildings of a height of ninety feet.

American Trucking accompanied its PUD application with a request for a zoning amendment for portions of the area to SP and C–2–A.[3] The application proposed two new structures to expand and supplement the facilities of the existing building. American Trucking's first proposed structure is a twin office building, the same height as the present structure, which would abut the present building on the west. The zoning amendment extending the SP zone forty-four feet in that direction is required for this structure. This building would extend south, through an alley which would be closed, to connect with the second, two-story, twenty-seven foot building which would occupy the south side of the alley, fronting on O Street and extending west to the 17th Street corner. This two-story building would house additional office space, support functions, conference rooms, and retail stores at the ground level on the 17th Street front.

While this application was pending, the first of two independently zoning changes, which petitioner argues are particularly significant, took place on September 14, 1978, when the Commission issued an order creating a bifurcated system of SP zoning. Zoning Commission Order No. 235, 25 D.C.Reg. 2570. This order created SP–1 and SP–2 zoning classifications with a height limitation of sixty-five and ninety feet respectively. All of the portion of the American Trucking site which was SP became SP–2, still subject to the ninety foot limitation.

On December 8, 1978, the Commission issued a public notice for hearings on American Trucking's preliminary application.

---

**3.** American Trucking's original request was for C–3–B zoning which they amended on June 5, 1978.

Three hearings were scheduled: January 18, March 22, and June 7 of 1979. For the first two hearings which dealt with the office portion of American Trucking's application, petitioner failed to qualify as a party in opposition pursuant to the Zoning Commission's Rules of Practice and Procedure, 20 DCRR § 2.44. Petitioner's major contention with the project at the time appears to be that it would deprive that area of the city of sorely needed residential units in favor of greater commercial development for the economic benefit of American Trucking.[4]

In response to protests by local residents and tenants at the first two hearings and to a report of the Office of Planning and Development, the Commission informed American Trucking that in order to be approved the proposed project must include a substantial residential component. Subsequently, and prior to the third hearing, American Trucking submitted a revised proposal which included a 130 foot apartment house as a substitute for the portion of the two-story, retail/office building at the corner of 17th and O Streets. The apartment building would contain 115 units and would have retail uses on the first floor. The development proposal also included separate parking facilities for the office and residential components. The development would provide recreational and common facilities for the residents of the apartment house. This amended proposal was considered at the hearing of June 7, 1979, with testimony focused exclusively on the new, residential component. At this hearing, petitioner complied with 20 DCRR § 2.44 and was admitted as a party in opposition.

In a second independent proceeding before the Commission, after this third hearing and prior to the Commission's preliminary approval of the PUD, all that portion of the subject site which was zoned SP–2 (with its ninety foot height allowance) was rezoned to SP–1 (with its sixty-five foot allowance). Zoning Commission Order No. 282, 25 D.C.Reg. 10927 (June 14, 1979).

The Commission dispatched its approval of the preliminary application on August 9, with which, in compliance with D.C.Code 1978 Supp., § 1–1509(e), the Commission filed findings of fact and conclusions of law. In its order the Commission identified the appropriate zoning classification for the PUD, in accord with the directive contained in Zoning Regulation § 7501.38.[5] This classification was SP–2 for the twin office building area and the two-story retail/office component on the O Street side. The location of the apartment building was to remain zoned R–5–D with its ninety foot height limitation. The Commission designated further guidelines, conditions, and standards that must be followed by the developer in his final application.[6] Significant among these were that the office building shall not exceed seventy-two feet in height, that there be at least a thirty foot setback of the office from an adjacent apartment building with consideration given to an even greater setback, that the new apartment building shall not exceed ninety feet, that recreational space be provided for occupants of the apartment building with a minimum of seventy percent of such space open to the sky, and that the facade of the office building on O Street be designed to eliminate any adverse aesthetic effects on the neighborhood.

After announcement of the decision, the Commission denied petitioner's motion to extend the time in which to file a motion for reconsideration and petitioner then filed this petition.

---

4. Petitioner, at the June 7 hearing, indicated through Anne Sellin that it preferred a four hundred unit residential apartment with a height limit of ninety feet, extension of the R–5–D zone down the entire length of O Street, and a larger setback of the proposed office building from the Berkeley House apartment.

5. Zoning Regulation § 7501.38 provides in part: "The Zoning Commission's preliminary approval shall set forth the appropriate zoning classification...."

6. Zoning Regulation § 7501.38 requires the Commission to state in detail the elements and guidelines which shall be followed by the developer in the final application.

## II. The PUD Regulatory Scheme

The prior regulatory scheme for PUD approval which was elected by American Trucking under the new regulations, Zoning Regulation § 7501.92, 25 D.C.Reg. 7993 (1979), provides for a three-stage approval process. The first stage is the approval of the preliminary application. § 7501.38. A public hearing may be held at the discretion of the Zoning Commission on the application. § 7501.37. The elements and guidelines established at this stage are binding on the developer in his final application and no subsequent changes may alter these elements and guidelines.[7] The Zoning Commission also designates the appropriate zoning for the PUD, if a change in zoning is necessary, and an application for change in zoning is filed by the applicant in conjunction with the PUD application. §§ 7501.2, 9101.3.

At the second stage, final approval of the PUD, the Commission review is usually limited to whether the plans conform to the elements and guidelines contained in the original approval and whether the applicant has provided all the information required under § 7501.39. At this stage, the regulations require the Commission to hold public hearings and give notice of these hearings as it would for any change in the maps or regulations of the Commission, including requests for zoning changes. § 7501.391. The provisions of § 9101.3 indicate that the notice and hearing provisions are identical for both zoning changes and PUD approval. Thus, § 7501.2 anticipates that zoning amendments deemed appropriate for the PUD will be considered by the Commission along with the final application for the PUD. Such procedure is logical.

The third stage of the approval process is review and implementation by the Board of Zoning Adjustment, §§ 7501.392, –.4. The Board must ensure that the final project conforms, with certain limited exceptions outlined in the regulations, to the plan approved by the Commission.

## III. Review

■ Despite the fact that the order in this case is only a preliminary approval of a PUD, legal rights, duties, and privileges are concluded as to the parties involved. *See* DCAPA, D.C.Code 1978 Supp., §§ 1–1502(8). The regulations of the Commission require resolution at this stage of disputed facts specifically applicable to the final plan. Municipal agencies are requested to present findings concerning the impact of the plan on traffic, pollution, population density, and other important matters of concern to the entire city. § 7501.32. This information is used by the Commission to establish the guidelines and standards against which the application for final approval is judged. Consequently, this court has held in *Capitol Hill Restoration Society v. Zoning Commission*, D.C.App., 287 A.2d 101, 105 (1972), that approval of a preliminary application for a PUD is a contested case under the Administrative Procedure Act and is properly before this court as a final order entitled to review. D.C.Code 1978 Supp., § 1–1510.

## IV. The Comparison Requirement

Petitioner's comparison argument is founded on Zoning Regulation § 7501.1. In three paragraphs, the purposes of a PUD are set forth. It is sufficient to note that the purposes are, inter alia, to "offer a variety of building types with more attractive and efficient overall planning and design," "to improve circulation and site facilities," and in the event that an increase in building height over that permitted by existing zoning is granted, such increase must "provide future occupants of *planned unit developments* with a living and/or working environment and amenities superior to those which can be achieved by applying the general provisions of the Zoning Regulations."

---

**7.** Zoning Regulation § 7501.39(a) requires that the application for final approval of the PUD contain "[a] certification that all information submitted is in accordance with the elements and guidelines contained in the Zoning Commission's preliminary approval under Section 7501.38."

Petitioner argues that, implicitly or explicitly, § 7501.1 requires applicants for a PUD to provide substantial evidence at hearings that the facility they propose is superior in several ways to any which is available under the general provisions of the zoning regulation. There is, they argue, no evidence whatsoever in the Commission's preliminary order comparing the plan offered by American Trucking with whatever can be provided under standard regulations.

A. The Implicit Requirements of Article 75

■ The first two paragraphs of Article 75 do not require such a hypothetical, side-by-side comparison as petitioner contends. As a practical matter, speculating as to the type of facilities which "might" be available under traditional regulation is, in itself, a potentially endless task limited only by the imagination. Furthermore, at the preliminary hearing stage, the actual characteristics of the PUD are only *in vitro* since the Commission establishes guidelines and elements for the final project only in its order granting the preliminary approval. For these two reasons, such a comparison is almost impossible during the actual hearings.

■ More importantly, however, these paragraphs stand as a preamble to the PUD regulatory scheme and restate, for this city, the accepted view of the purpose of the PUD as it has developed in the past two decades. *See* Babcock, Krasnowiecki & McBride, *The Model State Statute* in Urban Land Institute, Legal Aspects of Planned Unit Residential Development, Technical Bulletin 52 (1965). This statement of purpose indicates that the PUD scheme is to be used as a tool of land use development which supports the objectives of the community by permitting the development of large areas as a unit. This package approach to land use is an antidote to the ill effects of traditional Euclidean zoning where limitation on location, lot size, use, *square footage*, and building height may frustrate the type of growth intended by the community. *See Cheney v. Village 2 at*

*New Hope, Inc.*, 429 Pa. 626, 629, 241 A.2d 81, 83 (1968). The first paragraphs of Article 75 simply require that in exchange for this flexibility which a PUD approval provides the developer, he must provide a synchronized amalgam of living, institutional, and commercial facilities with diversity in buildings and structures that is in the spirit of the Zoning Regulations. *See* 5 P. Rohan, Zoning and Land Use Controls § 32.01[3] (1978). Implicit in the concept of a PUD is the recognition that although this type of growth is an objective of the zoning regulations, it often is difficult to achieve with piecemeal, lot by lot development.

■ The question which Zoning Regulation § 7501.1 compels the Commission to consider is whether the PUD application as proposed by American Trucking meets the "intent and purpose" of the district and is "consistent with the spirit, intent, and purpose of the Zoning Regulations." As a court of review, we must acknowledge that this question is better answered by the Zoning Commission which has the expertise to make such a broad justification based on elements of fact, policy, and experience. The court is more concerned that the Commission followed procedures designed to assure that this decision is proper and adduced enough testimony to support its conclusions than it is concerned with the virtue of the decision. *See* Krasnowiecki, *Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control*, 114 U.Pa.L.Rev. 47, 77–78 (1965). Such is the requirement of the Administrative Procedure Act, D.C.Code 1978 Supp., § 1–1509(e).

■ The procedure followed by the Zoning Commission in this case goes beyond those minimum rights guaranteed by regulation. At the preliminary stage, the Commission is not required to hold a public hearing, § 7501.37, but nonetheless did hold such a hearing for which proper notice was published. At the three hearings, over five hundred pages of testimony were taken by the Commission and the record contains over four hundred pages of information submitted by agencies and interested per-

sons. From the testimony, the Commission made thirty-seven findings of fact and six conclusions of law. The completeness of the proceedings is further supported by the fact that the Commission negotiated a change in the PUD plan to include a substantial residential component as a result of the information gathered at the first two hearings.[8] They further imposed conditions on the final application which require American Trucking to consider proposals for creating a greater setback between the twin office building and the adjoining apartment building.

■ Petitioner's position, essentially, is that the first two paragraphs of § 7501.1 create a contested issue which must be resolved with findings of fact. *See Dietrich v. Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 473 (1972); D.C.Code 1978 Supp., § 1–1509(e). Petitioner claims that substantive evidence must support the conclusion that the PUD facilities are superior to those available under the general regulations. That is not the case. Section 7501.1 details the purpose of the PUD scheme and as such is not an issue—rather it is an expected result of the Commission's resolution of legally relevant issues. *See Wheeler v. Board of Zoning Adjustment*, D.C.App., 395 A.2d 85, 89 (1978). Our role does not include making such a judgment.

Many zoning ordinances contain similar statements of purpose as preambles to specific subsections. *See R. Anderson, American Law of Zoning* § 12.09, at 488 (1968). The Zoning Regulations of the District of Columbia do the same. *See, e. g.*, §§ 4101.1,

8207.2. Like statements of purpose contained in enabling acts, such statements were included mainly to fortify against constitutional attack. *Anderson, supra* at 485. In addition, some such preambles guide the court toward an understanding of the relationship between the regulations and the approved statutory objectives of zoning. *Id.* at 486. Just such a provision is the preamble of Zoning Regulations, Article 75.[9]

■ On other occasions, we have held that statements of purpose in the Zoning Regulations do not create contested issues, even where petitioner has presented testimony on the point. In *Wheeler, supra,* this court ruled that the Board's decision was not statutorily incomplete because there were no explicit findings on whether the special exception being sought would promote "stability in the neighborhood." We ruled that "stability" was not an issue, but rather an expected result because it was contained in the purpose section of the regulation.[10] The proper procedure, we indicated, was for the Board to make findings on the relevant factors stated in the regulations that followed the preamble. *See also Dupont Circle Citizens Association v. Board of Zoning Adjustment*, D.C.App., 390 A.2d 1009 (1978) (court examined whether Board findings satisfied specific conditions that special exception be "in harmony with the general purpose and intent of the zoning regulations"); *Citizens Association of Georgetown v. Board of Zoning Adjustment*, D.C.App., 365 A.2d 372 (1976)

---

8. All of petitioner's requests were not met, *see* note 4 *supra*, but we must also note that all of American Trucking's wishes were not met. American Trucking did not wish to operate a residential apartment, believing that it was not the most economical use of the property.

9. This section also indicates that the PUD provisions shall be applied in a nondiscriminatory manner in compliance with the uniformity requirement of the Zoning Act, D.C.Code 1973, § 5–413, which provides: "All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts." *See Dupont Circle Citizens Ass'n v. Zoning Comm'n*, D.C.App., 355 A.2d

550, 558–59 (1976) which holds that the uniformity provision does not prohibit a classification which is reasonable.

10. Zoning Regulation § 4101.1 provides:

The Special Purpose District is designed to stabilize those areas adjacent to the C–4 District which contain office, other Central Business District supporting uses, as well as desirable sites for residential *buildings*. Offices, *apartment houses, hotels*, and controlled parking facilities are to be encouraged therein and the *district* will be generally restricted to the periphery of the C–4 District. [Emphasis in original.]

(Board's findings of fact insufficient to fulfill conditions of § 3101.46 as prerequisite for special exception); *Salsbery v. Board of Zoning Adjustment*, D.C.App., 318 A.2d 894, 897 (1974) ("Board's findings of fact and opinion should have contained, inter alia, expressed conclusions relating to [stated purposes of granting a variance]. Also, the underlying findings of fact should provide the rational bases for such articulated conclusions"). We hold that the first two paragraphs of amended Article 75 of the Zoning Regulations do not create a contested issue on which specific findings of fact and conclusions of law regarding the relative benefit of the proposed PUD over possible structures permitted under existing zoning need be found.

■ Since the first two paragraphs of Article 75 describe the end result of the Commission's examination, we must decide to what extent their conclusion that the PUD proposal does comply with the purposes of Article 75 is "supported by subsidiary findings of basic facts on material issues." *Dietrich, supra* at 473. Unlike other sections of the Zoning Regulations, such as § 8207.2 authorizing special exceptions, Article 75 does not contain a recitation of all the relevant material issues. *See also Stewart v. Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973) (Board has no authority to grant a special exception to a use other than those stated in the regulations, and the factors that the Board of Zoning Adjustment may consider are restricted by the regulations). This omission is by necessity since the PUD approval process must be more flexible to accommodate potential diverse community needs. The alternative is a barrage of complex regulations governing every conceivable structure available to a PUD developer. *See* Krasnoweicki, *supra* at 71. Therefore, the Commission is required by the Administrative Procedure Act, D.C.Code 1978 Supp., § 1–1509(e), to make findings of fact on relevant "contested issues" that are raised by the parties to the proceeding. Our role *then is only* to examine these contested issues and to determine whether the Commission's conclusions meet the test of sub-

stantial evidence set forth in *Citizens Association of Georgetown v. Zoning Commission*, D.C.App., 402 A.2d 36, 41–42 (1979). The Administrative Procedure Act substantial evidence test requires (1) that the agency make findings of basic facts on all material contested issues; (2) that these findings, taken together, must rationally lead to conclusions of law which are legally sufficient to support the decision; and (3) that each basic finding is supported by substantial evidence.

■ This standard is aptly met. The Commission isolated and ruled on numerous contested issues: traffic impact, proposed parking, pollution impact, proposed commercial use, loss and addition of proposed residential development, projected economic benefit, and light and ventilation to the neighboring apartment building. We have examined the record and find that there is testimony supporting each of these findings.

That these findings rationally lead to the conclusions of the Commission is also apparent. On some of these contested issues, the Commission modified the PUD in favor of American Trucking (traffic, parking, pollution, and economic benefit), and on some in favor of the opponents (residential component, commercial zoning, setbacks, building heights). The project which received the Commission's preliminary approval is a compromise for all interests and supported by "enough basic facts, rationally connected to the decision and supported by the evidence." *Id.* at 44.

As to whether the decision is supported by sufficient evidence, we deem it unnecessary to cite the numerous pieces of evidence in the record and the order of the Commission which support their conclusions. Suffice it to point out that testimony included that of a traffic expert, the D.C. Department of Transportation, the D.C. Department of Environmental Services, parties on both sides of the issue of commercial use, the Office of Planning and Development, the Advisory Neighborhood Commission, Bay State Tenants' Association, and numerous others.

In light of this analysis, it is beyond doubt that the Zoning Commission was fully justified in reaching the conclusions that it did. We hold that there is substantial evidence in the record to support the Commission's decision.

B. The Explicit Requirements of Article 75

 Petitioner further argues, in the same vein, that the third paragraph of Article 75 explicitly requires a comparison of the PUD proposal facilities with those available under the general provisions of the Zoning Regulations. Petitioner's argument is that a grant of a height incentive to American Trucking triggers the application of this provision requiring comparison. This height incentive, arguably, is the result of the Commission's designation of the appropriate zoning for the PUD in the preliminary approval as SP–2 (ninety foot limit) to allow for construction of the office component in areas previously zoned SP–1 (sixty-five foot limit). We need not reach the question of whether the third paragraph of Article 75 requires an explicit comparison of the proposed plan with that available under general zoning regulations because in this case there has been no height incentive granted.

Petitioner misconstrues the regulatory scheme in the zoning regulations for a PUD. A height incentive is granted as an exception to the zoning that will remain in effect in the area of the PUD after completion. This incentive is specified in the Article 75 regulations and is described as "the maximum relaxation of the standards in the Zoning Regulations for the district in which a planned unit development is to be located." § 7501.24. For example, no incentive to build over 130 feet may be granted in a PUD with the present zoning of SP. Under the new regulations, incentives may not exceed seventy-five feet in SP–1 and ninety feet in SP–2. Under these new regulations, if such incentive increase over the height permitted by the zoning in effect is sought by the applicant, he shoulders the burden of demonstrating and justifying the public benefit of the increased height. § 7501.41,

25 D.C.Reg. 7993 (1979). Under the version of Article 75, applicable in this case, the regulations provide that the application shall not be approved if the Commission determines that the primary purpose of the PUD is to circumvent existing zoning regulations.

The case at hand is much different. Here, the applicant has requested rezoning "in conjunction with" its PUD application pursuant to the provision of § 7501.2. And, as specified in that regulation, the Commission after three days of hearings has informed the applicant that the appropriate zoning classification which should be requested is other than that which he originally sought. This decision is a product of the adversary proceeding which took place during the period of hearings. The designation of the appropriate zoning classification accompanies the preliminary approval of the PUD and the applicant is required to submit a separate application for zoning change along with the PUD application as a condition for final approval. The height of the new building will not need an exception to the zoning regulations because it will be within the limits designated by the new zone.

This process is anticipated by the notice and hearing regulations contained in § 9101.3 and § 7501.39. That the PUD application and the zoning change must be acted on at the same final proceeding is only a logical construction of the regulations. We hold, therefore, that where the appropriate zoning for a rezoning request is designated by the Commission in conjunction with its preliminary approval of a PUD application, and the applicant's PUD proposal is conditioned on his seeking such a zoning amendment, that does not constitute a height incentive under Article 75. Since there is no height incentive granted in this case, we need not decide whether the provisions of the third paragraph of Article 75 require a side-by-side, empirical comparison of the PUD application structures with those possible under the general provisions of the zoning regulations.

## V. The Rezoning Argument

Petitioner's second argument, that the Commission's approval of the preliminary application conditioned on a rezoning of a section of the PUD area was in effect a final rezoning, is based on an equal improper understanding of the Zoning Regulations.[11] Petitioner argues that if the preliminary approval coupled with the rezoning condition is, in effect, rezoning, the Commission is required by Zoning Regulation § 9101.42 and D.C.Code 1973, § 5–415, to provide notice and a hearing prior to the preliminary approval.

The Commission is required by the Zoning Regulations to designate the appropriate zoning which shall be applicable when necessary in conjunction with a PUD application. § 7501.2. The PUD applicant is then required to submit a rezoning request along with his final request for approval of the PUD. § 9101.3. At this point, the Zoning Regulations specifically and unequivocally trigger the notice and hearing requirement of § 9101.4. Any objections to the rezoning, including matters originally raised in the preliminary hearings, are cognizable at the final approval hearings held on both the PUD application and the rezoning application. *Citizens Association of Georgetown v. Board of Zoning Adjustment*, D.C.App., 403 A.2d 737, 743 (1979) (approval of campus plan subject to the attack in future hearings on whether particular use is objectionable to neighboring property). Since the PUD use is conditioned on the rezoning application being granted, if the rezoning should fall, then the PUD must fall. The regulations anticipate, rightly so, that issues relevant to the PUD application and the rezoning application are interrelated and, thus must be heard together. Preliminary approval of the PUD application in no way is a manner of short-circuiting the standard procedures for rezoning applications.

The nature of the PUD approval process, as well as the plain language of the regulations, demands this procedure. By its very purpose a PUD requires a compromise of interests among developers, business, citizens, and municipality. The rigidity of the zoning regulations bespeaks one result of this compromise on a city-wide basis. On the other hand, the provisions for a PUD contained in the regulations bespeak the willingness of the community to negotiate anew on an ad hoc basis to create a greater good for a smaller sacrifice of desires. It is a powerful tool which provides a forum for various interests which might be competing in order to provide controlled development where none might otherwise take place. As such, the preliminary stage of the PUD proceedings must be open, supple, and unrestricted. If notice and hearing were required during this process for every modification of a use, zone, building height, or floor space in the potential PUD, the procedure would be paralyzed and nothing would be accomplished. The regulatory scheme anticipates this negotiation stage in order to augment and supplement the existing zoning ordinances in the public interest. *See Rudderow v. Township of Mt. Laurel*, 121 N.J.Super. 409, 412, 297 A.2d 583, 585 (1972).

The Commission can only determine the appropriate zoning classification for the PUD after this process is complete because the characteristics of the PUD are, essentially, unknown until the negotiation period is over. The Commission acts as arbitrator of the competing interests in moderating the characteristics of the PUD. The conditions enumerated by the Commission in the preliminary approval are binding on the developer because they are the product of the give and take between the developer and community interests. Only the developer is foreclosed from modifying these conditions at the final hearing. Qualifying parties may continue to attack both the PUD and the rezoning application at the

---

11. In its approval of the preliminary application, the Commission required that:

An application for a change of zoning from R–5–D and SP–1 to SP–2 for Lots 846, 159, 89, 90 and 91 shall accompany the application for final approval. Lots 94, 847 and 816–819 shall remain zoned R–5–D and shall not be changed.

final approval hearings and, if persuasive, defeat the application in toto.[12] We hold that the designation of the appropriate zoning for a PUD contained in the preliminary approval of a PUD application does not act as a final order of rezoning and, consequently, does not require the notice and hearing of either D.C.Code 1973, § 5–415 or Zoning Regulation § 9101.42.[13]

## VI. Denial of Party Status

 Petitioner's third argument is based on a misrepresentation of the record in the Commission hearings. Petitioner contends that at the first two hearings held in January and March of 1979, at which the office component of the PUD application of American Trucking was presented and discussed, it was denied party status because the Commission arbitrarily imposed a rigid and formalistic requirement that each person seeking to participate as a party include the word "party" in his application.

The Commission Rules of Practice and Procedure cannot be clearer on the requirements for a person to qualify as a party in opposition at a hearing. Rule 20, DCRR § 2.44 requires five specific pieces of information from the persons seeking party status.[14] The information requested from such persons is significantly relevant to the orderly proceeding of the Commission business. The specific identifying information required allows the Commission to organize hearings so as to protect the rights and interests of all citizens. The requirement that the person state the manner in which he is aggrieved is necessary to avoid immaterial appearances by those without standing to contest Commission rulings. Such requirements do not frustrate the policy of broad-based citizen participation in Commission proceedings. In fact, they are designed to facilitate that policy.

Petitioner maintains that it attained party status by way of two letters sent to the Commission prior to the January hearing.[15] Neither record item cited by petitioner states the information required under DCRR § 2.44. The first letter is a two-line, handwritten letter signed by Anne Sellin which neither mentions petitioner nor

12. In *Citizens Ass'n of Georgetown, supra*, 403 A.2d 737, we held that the Board's approval of a new campus plan was subject to attack in future hearings on the question of whether conditions imposed by the Board on preliminary approval are objectionable to neighboring property owners. *See also Dupont Circle Citizens Ass'n v. Zoning Comm'n, supra* at 554 (deficiencies of factual basis for preliminary PUD approval are remedied by the final order as long as the petitioner was accorded a due process type hearing). *But see Capitol Hill Restoration Society v. Zoning Comm'n, supra* at 106 (procedural defects in preliminary hearing cannot be remedied in final hearing and, therefore, doctrine of exhaustion of administrative remedies does not extinguish petitioner's claim).

Furthermore, the Commission specifically extended to all parties in the June hearing extra time in which to file further testimony and proposed findings of fact and conclusions of law.

13. We note that the notice of the preliminary hearings which was given on December 8, 1978, contained enough information to satisfy the requirements of D.C.Code 1973, § 5–415. *See Gerstenfeld v. Jett*, 126 U.S.App.D.C. 119, 374 F.2d 333 (1967); *Aquino v. Tobriner*, 112 U.S.App.D.C. 13, 298 F.2d 674 (1961).

Subsequent changes in the zoning regulations which change the zoning of the area of the PUD during the pendency of its application are a matter of public record and petitioner is charged with notice thereof. The original notice continues to be effective under the statute. *Morrison v. D. C. Board of Zoning Adjustment*, D.C.App., 422 A.2d 347, 352 (1980) (*reh. denied*).

14. Rule 20, DCRR § 2.44 provides:

To participate as a party in a proceeding before the Commission, any affected person shall file with the Commission not less than five (5) days prior to the date set for the hearing the following information:

2.441 His name and address.

2.442 Whether he will appeal as a proponent or opponent of the application.

2.443 If he will appeal through legal counsel, and if so, the name and address of legal counsel.

2.444 A written statement setting forth the manner in which he may be affected or aggrieved by action upon the application and the grounds upon which he supports or opposes the application.

2.445 A list of witnesses who will testify on his behalf.

15. At the second hearing, petitioner argued that its intention to be a party in opposition, as demonstrated in these and other letters, should be enough to admit it as a party in opposition.

states any relationship between Anne Sellin and petitioner. Granting to the letter the presumption of every possible manner of compliance with § 2.44, we fail to see how it fulfills two of the most significant requirements: name and address of the person and a statement of the manner in which he may be aggrieved.[16] There was no reason for the Commission to have assumed that the letter was what petitioner purports it to be now.

The second letter is a joint letter from "Sophia Menatos, ANC2B" and "Anne Sellin, Dupont Circle Citizens Assoc." This letter has only one stated purpose which is a request that the Zoning Commission "defer the American Trucking P.U.D. hearing." Nowhere in this letter does the petitioner request to be heard as a party in opposition or state the grounds for opposition.

We affirm the Zoning Commission's preliminary approval of the PUD as ordered.

*Affirmed.*

16. The entire letter consists of the following: "I would like to testify on Jan. 18 before the Zoning Commission in Case 78–6P in opposition. Anne Sellin."