Angene G. **RAFFERTY,** et al.,
Petitioners,

v.

**DISTRICT OF COLUMBIA ZONING COMMISSION,** Respondent.

No. 89–384.

District of Columbia Court of Appeals.

Argued Oct. 9, 1990.

Decided Dec. 3, 1990.

Scott J. Rafferty, Baltimore, Md., for petitioners.

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FERREN, STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Petitioners Angene G. Rafferty and Joseph R. Rafferty have asked us to review an order of the District of Columbia Zoning Commission denying their application to modify the architectural plans of a previously approved planned unit development (PUD) so that they might construct a two-story addition to the rear of their house. Their most important contention[1] is that the Commission should be precluded by principles of estoppel from withholding its assent because the District issued a building permit to the Raffertys authorizing the proposed construction and because the PUD restrictions were not properly recorded. Concluding that the Commission has failed to make findings of fact or conclusions of law with respect to the issue of estoppel, as required by D.C.Code § 1–1509(e) (1987), we vacate its order and remand the case for further proceedings.

I

A PUD is a development in which the density and height restrictions which would otherwise be imposed by the zoning regulations are relaxed for the purposes, among others, of offering a variety of building types with more attractive and efficient overall planning. *See generally Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n*, 426 A.2d 327, 331–32 (D.C.1981). The PUD scheme permits the development of a large area as a single unit. *Id.* at 332. In exchange for the flexibility which the concept provides, the developer must create a "synchronized amalgam of living, institutional, and commercial facilities with diversity in buildings and structures that is in the spirit of the Zoning Regulations." *Id.,* citing 5 P. ROHAN, ZON-

---

1. The Raffertys' other arguments are addressed at pages 176 to 79, *infra.*

ING AND LAND USE CONTROLS § 32.01[3] (1978).

In 1977, in Order 195, the Zoning Commission approved a PUD for a site on Massachusetts Avenue, N.W., approximately three blocks northwest of American University. The development was to consist of town houses in an area which was zoned for single-family homes. Order 195 provided that the final design of the buildings was to conform to certain specified architectural drawings. These PUD restrictions, however, were not recorded on the zoning map as required by 11 DCMR § 2407.4 (1987).

In 1983, the Raffertys, a married couple now in their sixties, purchased a town house within the PUD. In 1987, they decided to add a bedroom, bathroom and adjoining deck to the main floor of their house and a garage to the bottom floor. They applied to the Department of Consumer and Regulatory Affairs (DCRA) for a building permit and, on February 26, 1988, a permit was duly issued. Assuming in light of the issuance of the permit that the work could lawfully proceed, the Raffertys made an initial payment of $20,000 to the contractor whose services they had retained for the proposed construction. Work was promptly begun on the foundation.

On June 21, 1988, in response to a complaint from a neighbor's attorney, the DCRA issued a stop work order. This action was taken as a result of the discovery by District officials that the permit had been erroneously issued because the Rafferty property was part of an approved PUD.[2]

On July 20, 1988, the Raffertys submitted an application to the Zoning Commission to modify the approved PUD plans so as to permit the Raffertys to complete work on the proposed addition. At the initial Commission hearing on August 8, 1988, the Commissioners expressed concern that it might be unfair to enforce the PUD restrictions and to prevent the proposed

construction, and that principles of estoppel and laches might apply. The discussion included the following:

> CHAIR BENNETT: [I]f we make a mistake in allowing a building permit to be issued, and she in this case proceeded with construction and then had the stop order applied to her case, and we decide that we cannot in good conscience and for whatever reason waive rules and modify and whatever, then doesn't the doctrine of estoppel and laches come into play?
>
> MR. WILLIAMS: I am very sympathetic to the question that Ms. Bennett raised.... All we know is that a stop-work order got issued.... I think they got a permit and in good reliance. I mean, my gosh, they got a permit. Not everyone even bothers with that little nicety.... I know, and everything that to me sounds like the usual recitals on the doctrines of laches, estoppel, reliance and I guess I am curious as to why—I think we need to help these people in some fashion.... I am afraid there is going to be a pile of mud there, unless they can get relief on the other side, which identify with laches, reliance and estoppel. [T]hey made a substantial investment, they are out [$]25,000, piles of mud, inconvenience, et cetera. And we can take care of it in five minutes.
>
> MR. PARSONS: [W]e have to do something to relieve a patently unfair situation that has occurred to you.... What you are hearing from among the Commissioners today is that you will probably get a granting of what you are asking for.... I am convinced they have been messed over by the City enough.... I think you can make your granting of this application based on the fact that the harm was done and that they expended funds. An error was made by the District. Say we're not going to do it for anyone else.

The Commissioners nevertheless made it clear that public notice and a hearing

---

**2.** The DCRA's attention was directed to the construction by the counsel for a neighbor who claimed that it would be in violation of density restrictions. Although this claim was not found to be meritorious, the DCRA's investigation revealed the existence of the PUD.

would be necessary before the Commission could make a final decision, and that the interests of other individuals might also be affected. A hearing was scheduled for November 3, 1988.

Prior to the hearing, several PUD residents communicated to the Commission their opposition to the Raffertys' plan. There was concern that the proposed addition would cut into the open space in the center of the block, impair the ambiance and design of the PUD, reduce light and air to the patios and gardens of nearby houses, and interfere with the privacy of other residents.[3] On October 28, 1988, the District's Office of Planning, which had previously supported the Raffertys, issued a report substantially sustaining the validity of these concerns. Advisory Neighborhood Commission 3–D, whose jurisdiction includes the site of the PUD, reported that the ANC had unanimously voted to recommend that the application be denied. The Commission also received letters of support for the Raffertys from several residents of the PUD, and the District's Office on Aging urged that the Raffertys' age and medical needs be considered in determining whether the proposed addition to their house should be authorized.

Upon motion of the Raffertys, who wished to have more time to respond to the opposition which had been generated, the evidentiary hearing was continued from November 3 to 17, 1988. On November 9, 1988, the Raffertys' neighbors, Kyle and Kimberly Samperton, who were opposed to the proposed construction, requested party status in the proceedings before the Zoning Commission. Their request was promptly granted.[4]

At the November 17, 1988 hearing, Mrs. Rafferty testified that approval of the application would serve the objective of making available housing suitable for elderly persons. She maintained that other housing with a first floor bedroom was not available in her neighborhood. She stated that she and her husband had understood when they purchased their home that there were no PUD restrictions which would prevent them from building an addition. She claimed that the proposed construction would not reduce her neighbors' privacy because the neighbors' yard was already readily visible from the windows of other existing houses. Mrs. Rafferty also maintained that any shading effect on neighbors would be limited to certain morning or late afternoon hours at certain times of the year. She complained that she and her husband had only received one day's notice of the meeting on ANC 3–D and that the meeting was dominated by a group of opponents whose views were not necessarily representative of other residents of the area. Finally, Mrs. Rafferty and her counsel argued that approval of their application would not set a precedent for other modifications of the PUD because it was not practically feasible for most PUD residents to construct substantial additions to the rears of their houses, and because the Raffertys' case presented considerations of estoppel which probably would not arise in the event that any other residents were to attempt to build additions in the future.

Opponents of the application generally testified in a manner consistent with the written submissions which we have described above. A representative of the Office of Planning reiterated the basic position taken by the Office in its October 28 report, although he acknowledged that the report had in some respects overstated the negative effects of the proposed addition. This witness also conceded on cross-examination that the other residents' privacy concerns might be mitigated or eliminated if the Raffertys did not construct a deck (as they had originally planned) and if the proposed addition had no side windows. Mrs.

3. Some individuals also stated that they had purchased houses in the development in reliance on its PUD status and in the consequent expectation that neighboring houses would not be subject to major alterations or additions.

4. The Commission permitted the filing of the Office of Planning report and the participation of the Sampertons as parties in spite of the untimeliness (by a few days) of the proponents' requests. For the reasons discussed at page 177, *infra*, however, we do not believe that reversal is warranted on that account.

Rafferty testified that the Raffertys were willing to forego the deck and to make other accommodations to their neighbors' concerns.

On January 9, 1989, the Commission issued a decision denying the Raffertys' application. The Commission stated that it agreed with the views expressed by the Office of Planning, by ANC 3–D, by the Sampertons, and by other persons opposed to the modification of the PUD. In particular, the Commission found that the Raffertys' proposed addition

> would result in a significant reduction in the open space quality of the PUD site, would have a negative effect on privacy and would reduce the light and air of adjacent property owners.

The Commission also found merit in the concerns expressed by opponents regarding "negative residential value of approving the proposed modification and the integrity of the PUD process." The Commission held as a matter of law that "[a]pproval of the modification would be inconsistent with the spirit and intent of Zoning Commission Order No. 195 and would be inconsistent with the associated recorded covenant." The Commission further concluded that approval would have an adverse impact on the community and would not serve the purposes of the PUD process. There were no findings of fact or conclusions of law regarding estoppel or laches, the very subject which the Commissioners had raised at the earlier hearing.

On February 22, 1989, the Raffertys filed a brief petition for reconsideration which they subsequently supplemented with a more complete one. They argued, among other things, that the application of the PUD restrictions to bar the proposed construction would be inconsistent with the District's comprehensive plan, *see* D.C.Code § 1–245 *et seq.* (1987), and with the District's commitment to meet the housing needs of elderly residents. On April 6, 1989, the Raffertys requested the Commission for leave to supplement the record with the drawings and plans from the PUD developer's original 1977 application to the Commission for PUD approval; these

drawings, which had previously been misplaced, had now been located. On April 12, 1989, the Raffertys filed a "Motion to Strike," in which they argued that it was error for the Zoning Commission to attach "great weight" to the views of ANC 3–D and that the Commission should strike from the record the letter purporting to express the views of ANC 3–D. On May 8, 1989, the Commission denied the Raffertys' petition for reconsideration on the merits without a written opinion.

## II

■ At the initial hearing on the Raffertys' application, as we have observed, the Commissioners made several allusions to the potential applicability to this controversy of the equitable doctrine of estoppel. Throughout this litigation, the Raffertys have contended that the District should be estopped from denying their request for modification of the PUD. In its decision, however, the Zoning Commission made no findings relating to that issue. We think that this was error.

In *District of Columbia v. Cahill*, 60 U.S.App.D.C. 342, 54 F.2d 453 (1931), a homeowner had made large expenditures to improve his garage, in reliance on the issuance of a building permit. The court held that the District was estopped from revoking his permit. Quoting from *People v. Rock Island*, 215 Ill. 488, 495, 74 N.E. 437, 440 (1905), the court stated that

> [w]here a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvement that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied.

*Cahill*, 60 U.S.App.D.C. at 343, 54 F.2d at 454.

In *Saah v. District of Columbia Board of Zoning Adjustment*, 433 A.2d 1114 (D.C.1981), this court held that the BZA would be estopped from denying a variance from density requirements where the applicant proved that he had commenced major improvements in reliance on the issuance of a building permit. The court observed that

although the applicant or his architect should have known that the proposed improvements would exceed the maximum lot occupancy, the same could be said of the District official who approved the plans. *Id.* at 1117. The court held that under the circumstances, the applicant's reliance upon the issuance of the permit was justified. *Id.*

Estopping a municipality from enforcing the law must be, at best, the rare exception, not the rule. "The doctrine of equitable estoppel is judicially disfavored in zoning cases because of the important public interest in the integrity and enforcement of the zoning regulations." *Interdonato v. District of Columbia Board of Zoning Adjustment,* 429 A.2d 1000, 1003 (D.C. 1981); *Wieck v. District of Columbia Board of Zoning Adjustment,* 383 A.2d 7, 10 (D.C.1978).[5] As we explained in *Interdonato, supra,* 429 A.2d at 1003,

> [o]nly by showing each of the following elements could petitioners successfully invoke an estoppel claim: (1) expensive and permanent improvements, (2) made in good faith, (3) in justifiable and reasonable reliance upon, (4) affirmative acts of the District government, (5) without notice that the improvements might violate the zoning regulations, and (6) equities that strongly favor the petitioners.

(Citations omitted). That it may be difficult for the Raffertys to prove the elements of estoppel, however, does not negate the obligation of the Zoning Commission to address the claim in a meaningful way.

In *Smith v. District of Columbia Board of Zoning Adjustment,* 342 A.2d 356 (D.C. 1975), a case which is quite similar to the present one, the petitioning homeowners claimed to have made substantial expenditures in reliance on a building permit issued by the District. They requested a variance and invoked the doctrines of estoppel and laches. The Board of Zoning Adjustment ruled against them without making findings with respect to these equitable issues. This court remanded the case to the Board, noting that

> [a] substantial legal issue has been raised by petitioners' claim that the city can be estopped from enforcing its Zoning Regulations where a citizen takes action in reliance on an order subsequently invalidated. *See Nathanson v. Board of Zoning Adjustment,* D.C.App. 289 A.2d 881, 884 (1972); *District of Columbia v. Cahill,* 60 App.D.C. 342, 54 F.2d 453 (1931). We cannot reach that issue unless we are provided with an adequate and concrete factual context in which to render our decision. For this reason the Board must make findings as to (a) whether there was reasonable and good faith reliance by petitioners on the issuance of the building permit and (b) the extent to which they were on notice that the deck might violate the Zoning Regulations.

*Id.* at 359. *See also* D.C.Code § 1–1509(e) (1987) (requiring agency findings on each contested issue of fact); *Perkins v. District of Columbia Dep't of Employment Servs.,* 482 A.2d 401, 402 (D.C.1984).

When an agency fails to make a finding on a material contested issue of fact, "this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Davis v. District of Columbia Dep't of Employment Servs.,* 542 A.2d 815, 819 (D.C.1988). "The only role for a court is to insure that the agency has taken a hard look." *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976). We cannot perform this function unless "the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision." *Dietrich v.*

---

**5.** *Cf. Office of Personnel Management v. Richmond,* —— U.S. ——, ——, 110 S.Ct. 2465, ——, 110 L.Ed.2d 387 (1990), in which the Supreme Court recently held that the government was not estopped by the erroneous advice of a government employee from denying disability benefits not otherwise authorized by law. The Court determined that it should once again "leave to another day whether an estoppel claim could ever succeed against the Government." *Id.* at ——, 110 S.Ct. at 2471.

*District of Columbia Board of Zoning Adjustment,* 293 A.2d 470, 473 (D.C.1972).

The District contends that no remand is required because this court can determine on the present record that it would be inequitable to impair the rights and expectations of residents of the PUD who were not responsible for an error which was made by the District. This court has never determined whether the District's erroneous issuance of a permit may operate to estop other interested persons from enforcing their rights under the zoning laws. *See Saah, supra,* 433 A.2d at 1117 n. 3; *Goto v. District of Columbia Board of Zoning Adjustment,* 423 A.2d 917, 925 n. 15 (D.C. 1980). The District relies on authorities in other jurisdictions holding that any estoppel against a municipality cannot operate against affected residents. *See, e.g., Lichte v. Heidlage,* 536 S.W.2d 898, 901–02 (Mo.App.1976) ("unconscionable to hold that aggrieved private parties could be prejudiced by the conduct of city officials with whom they are not in privity"); *Boyd v. Donelon,* 193 So.2d 291, 298 (La.App. 1966) (citations omitted) ("neighboring property owners … are not estopped by any permission or representations made by the municipal employees"); *Pascale v. Board of Zoning Appeals of City of New Haven,* 150 Conn. 113, 186 A.2d 377, 380 (1962) (assuming that a city may be estopped from enforcing a regulation because it issued a building permit, such estoppel will not defeat the rights of an aggrieved property owner). These authorities are not without logical force, but we think it inappropriate to decide the issue of first impression urged upon us by the District without the benefit of findings by the Commission and without an expression of the

Commission's views on the legal question presented.

Moreover, at argument, counsel for the Raffertys claimed that the objecting residents did not express their opposition to the construction in timely fashion and should now be barred by the doctrine of laches. Although the Raffertys' submission to the Commission was not articulated in terms of that doctrine, the Commissioners raised the issue of laches on their own initiative. See page 172, *supra.* This court has invoked the doctrine of laches in zoning cases both against private parties, *Goto, supra,* 423 A.2d at 925–26, and, over a vigorous dissent, against the District. *Wieck, supra,* 383 A.2d at 11–13 (majority opinion), *id.* at 13–15 (dissenting opinion). Under all of the circumstances, we direct that on remand the Commission also deal with the issue of laches, including the extent, if any, to which the Raffertys preserved that issue for Commission consideration.[6]

### III

The Raffertys raise a number of other issues which we address briefly.

### A. Substantial Evidence.

■ It appears to be uncontroverted, and we hold, that the proceeding before the Commission was a contested case within the meaning of the District's Administrative Procedure Act, D.C.Code § 1–1510 (1987). *See Dupont Circle Citizens Ass'n, supra,* 426 A.2d at 331 (preliminary application for a PUD is a contested case); *Capitol Hill Restoration Society v. District of Columbia Zoning Comm'n,* 287 A.2d 101,

---

6. The District also contends that, to the extent that the Raffertys rely on the issuance of a building permit, their estoppel claim would be more appropriately presented in their administrative appeal from the revocation of that permit. We were advised at argument that such an appeal is presently pending. We express no view on this issue since the Commission has made no findings of fact or conclusions of law with respect to it. The Commission is free to address this question on remand.

The District further maintains that the Raffertys' reliance on the building permit was unreasonable because they had actual or constructive notice of the PUD restrictions. *Cf. Saah, supra,* 433 A.2d at 1117 (reliance reasonable although homeowner or his architect should have known of restriction). For the reasons previously stated, we can evaluate this claim only, to invoke an awkward paraphrase of Senator Howard Baker's famous Watergate question, if the Commission first makes findings, *inter alia,* with respect to "what [the Raffertys] knew and when [the Raffertys] knew it," (or at least what they should have known, and when).

105 (D.C.1972) (proceedings with respect to PUD restrictions are contested cases rather than rule-making). The Raffertys contend that the Commission's findings are not supported by substantial evidence. *See Perkins, supra,* 482 A.2d at 402.

■ As noted in the preceding discussion, see pages 172 to 174, *supra,* the Raffertys' opponents presented evidence which, if credited, established that the proposed addition would impair other residents' privacy and the quality of the open space, light and air available to them. There was also evidence that residential values in the area would be adversely affected. We agree with the District that the Commission's findings on these subjects have adequate support in the record. Except in unusual cases, we will not second-guess credibility determinations by the agency. *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 42 (D.C.1979). If there were discrepancies in some of the testimony by those opposed to the addition, as the Raffertys contend, that is not conclusive; credibility is to be determined by the finder of fact, who is not confined to a cold paper record but has the opportunity to observe the demeanor of the witnesses. *Harris v. District of Columbia Comm'n on Human Rights,* 562 A.2d 625, 631 (D.C. 1989); *see In re T.M.,* 577 A.2d 1149, 1154 (D.C.1990).

B. Procedural Irregularities.

■ The Raffertys complain of the Commission's decisions authorizing the belated filing of the report of the Office of Planning and the untimely intervention of the Sampertons. We hold that the Raffertys have failed to show prejudice.

The report of the Office of Planning was supposed to be filed ten days before the hearing. 11 DCMR § 3011.5 (1987). Filing did not occur until October 28, 1988, six

days before the originally scheduled date of November 3, 1990. Since the hearing was subsequently postponed to November 17 at the Raffertys' request, however, any prejudice to which the Raffertys might have been subjected if the hearing had been held as initially scheduled was dissipated by the continuance.[7]

■ The Sampertons filed their application for party status on November 9, less than two weeks before the actual hearing date. 11 DCMR § 3022.3(f) (1987). A timely request is required, however, not in order to preview the evidence for the applicant's adversary, but rather to enable the Commission to determine whether the applicant is sufficiently affected by the controversy to justify party status. *Dupont Circle Citizens Ass'n, supra,* 426 A.2d at 337. Moreover, 11 DCMR § 3020.2 (1987) provides that

if surprise to the applicant ... is clearly shown and the inability to proceed is demonstrated, a hearing may be adjourned to allow the applicant ... sufficient time to offer rebuttal evidence....

The Raffertys made no request for such an adjournment. Finally, the Sampertons' evidence was not different in kind from that presented by other opponents of the proposed construction.

C. Advisory Neighborhood Commission Issues.

■ The Zoning Commission recited in its eleventh Finding of Fact that ANC 3–D, which represents the district in which the PUD is located, opposed the Raffertys' application on the ground that "it would destroy the architectural integrity of the court configuration of the PUD, would invade the privacy and enjoyment of adjacent neighbors, and would block sunlight from open space." The Commission reported in its sixth Conclusion of Law that it had "accorded [ANC] 3–D the 'great weight' to which it is entitled."[8] The Raffertys chal-

---

7. The Office of Planning changed certain aspects of its position on the day of the hearing, but these changes were largely favorable to the Raffertys and did not prejudice them.

8. D.C.Code § 1–171(d) (1987) provides in pertinent part that the written recommendations of

Advisory Neighborhood Commissions shall be given great weight. *See Friendship Neighborhood Coalition v. District of Columbia Board of Zoning Adjustment,* 403 A.2d 291, 294–95 (D.C. 1979).

lenge the Commission's action upon the ground that ANC 3–D had violated notice requirements imposed by applicable regulations.[9] They also claim that the ANC meeting was not fairly conducted.

The Raffertys further maintain that the Zoning Commission failed, in violation of its own rules of procedure, to mail a copy of the notice to ANC 3–E, which they say is "within two hundred feet of the property involved in the application." See 11 D.C. M.R. § 3015.3(c) (1987). They contend that ANC 3–E has a more significant elderly population than ANC 3–D does, and that residents of ANC 3–E would probably have been more sympathetic to their position than were their counterparts in ANC 3–D.

The Commission did not address in its decision the alleged deficiencies in the procedures of ANC 3–D, perhaps because it did not view its responsibilities as including the evaluation of alleged irregularities in the proceedings of another agency. The issue was, however, forcefully argued by the Raffertys in their post-hearing submission. A remand being required in any event for additional factual findings and legal conclusions regarding estoppel and laches, the Commission should likewise explain its disposition of the Raffertys' claim regarding ANC 3–D.

The Commission's alleged failure to mail notice of the hearing to ANC 3–E appears not to have been raised by the Raffertys before the Commission. The only reference to that issue appears in the Raffertys' brief in this court. "In the absence of exceptional circumstances a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time." *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1301 (D.C.

1990) (citations omitted). "[C]ontentions not urged at the administrative level may not form the basis for overturning the decision on review." *Id.* Although we have occasionally shown a measure of flexibility in relation to the requirement that any contention made in this court must first have been raised before the agency, *id.; see also J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 45 n. 4 (D.C.1989), we discern no exceptional circumstances here which would warrant departure from the general rule. Accordingly, we decline to address on the merits the Raffertys' contentions with respect to the alleged lack of notice to ANC 3–E.[10]

### D. The Comprehensive Plan.

The Raffertys contend that the Commission's decision is inconsistent with the District's comprehensive plan, see D.C.Code § 1–245 *et seq.* (1987), and with the associated Land Use Element Act of 1985 (LUEA), § 1–246 (1990 Supp.). They say that the comprehensive plan commits the District to working to achieve an adequate supply of housing to meet the needs of elderly residents, see 31 D.C.Reg. 1049 (March 9, 1984), and that the LUEA requires the Commission to review zoning regulations (including the PUD here at issue) to determine their consistency with the comprehensive plan.

The District responds by pointing out that although the Raffertys raised at the Commission hearing the general subject of the need for housing for the elderly, they did not mention the comprehensive plan until their request for reconsideration following the Commission's initial decision. The District also points out that the LUEA

---

9. One of the Commissioners remarked during the November 17 hearing that ANC 3–D apparently had not "designated an individual who was going to represent them [sic] and gone through the formalities that this ANC would need in order to participate *as a cross-examining party etcetera...*" (Emphasis added). In their brief, the Raffertys unfortunately convey a misleading impression of the Commissioner's remark by omitting the italicized words and placing a period after "participate."

10. In any event, failure to give notice to an ANC pursuant to 11 DCMR § 3015.3 (1987) does not deprive the Commission of jurisdiction. *Id.,* § 3015.10. If a failure of notice is alleged and proved, the Commission may in its discretion, after considering specified relevant factors, postpone a public hearing or hold it on the scheduled date. *Id.* § 3015.11.

requires the Zoning Commission to determine whether the District's *zoning regulations* are consistent with the comprehensive plan, and that PUD restrictions are not generally applicable zoning regulations. Noting that proceedings with respect to such restrictions are contested cases and do not constitute rulemaking, *Capitol Hill Restoration Society, supra,* 287 A.2d at 105, the District argues that the purpose of the plan is to provide guidance for broadly applicable government policy decisions rather than to determine whether an individual homeowner may make an addition to his or her home. Specifically, says the District, "the [comprehensive] plan did not require the Commission to reopen its 1977 PUD order and perform an analysis of the various plan objectives and policies in order to decide if the Raffertys should be allowed to add a bedroom to their house."

Since further proceedings are necessary in any event, we see no need to resolve these contentions on this appeal. On remand, the Zoning Commission may deal with them squarely and explicitly. *See generally Tenley & Cleveland Park Emergency Committee v. District of Columbia Board of Zoning Adjustment,* 550 A.2d 331, 335–40 (D.C.1988).

E. Consistency with the PUD.

The Raffertys contend that the proposed construction is consistent with the PUD as originally created. Since the purpose of their application to the Zoning Commission was to modify the PUD, however, we do not think that the present appeal provides the appropriate forum for adjudicating that issue. If the Raffertys came to believe that the construction was permissible without any need for modification of the PUD, they were free to withdraw their application to the Commission and to litigate their position in another forum in the context of a challenge to the revocation of their building permit.

IV

For the foregoing reasons, the order of the Zoning Commission is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*