HOTEL TABARD INN, et al., Petitioners,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent,

and

Archdiocese of Washington, D.C., et al., Intervenors.

No. 93–AA–1011.

District of Columbia Court of Appeals.

Argued Feb. 15, 1995.

Decided June 29, 1995.

---

Before FERREN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This case involves a petition of review from an order of the District of Columbia Zoning Commission approving an extension for a Planned Unit Development (PUD) for the intervenors, the Archdiocese of Washington, D.C. and K & C Associates Rhode Island Limited Partnership (the "Archdiocese" or "Intervenor"). The Archidocese requested an extension of the validity of the PUD order, which expired on April 3, 1993. Petitioners, Residential Action Coalition and Hotel Tabard Inn, argue that: (1) the Zoning Commission erred in not holding a hearing to determine whether the Archdiocese established good cause to extend the validity of the PUD; (2) the Zoning Commission failed to properly consider the amended Comprehensive Plan and the Advisory Neighborhood Commission's recommendations; and (3) the Zoning Commission did not have the authority to extend the validity of the PUD order a second time because the PUD order expired. We must first address the question raised by the Archdiocese of whether the extension of the validity of the PUD is a "contested case," thus establishing this court's jurisdiction to hear it on direct appeal from the agency.

## I.

In 1985, the Archdiocese sought rezoning of the north side of Rhode Island Avenue between 17th Street and Connecticut Avenue from an SP–1 District to a C–3–C District, pursuant to Chapter 24 and section 102 of the D.C. Zoning Regulations.[1] The Archdiocese also applied to the Zoning Commission for a Planned Unit Development (PUD) to authorize the partial demolition of historic rowhouses and the construction of an office building. The Zoning Commission held public hearings on April 21, 28, May 1, and 22,

Richard B. Nettler, Washington, DC, for petitioners.

John Payton, Corp. Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the statement in lieu of brief, for respondent.

John T. Epting, Washington, DC, with whom Whayne S. Quin and Louis P. Robbins, were on the brief, for intervenors.

1. An SP–1 District permits medium density development including residential uses, with limited offices for non-profit, trade, and professional organizations, permitted as a special exception requiring approval of the Board of Zoning Administration (BZA). The maximum height of a structure in an SP–1 District is 65 feet. The C–3–C District allows major business and employment centers of medium/high density development with a maximum height of 90 feet.

1986, to consider the PUD approval and granted the PUD request on November 3, 1986. The order took effect on January 16, 1987, and directed the Archdiocese to apply for a building permit within two years of that date and begin construction by January 1990. Further, the Mayor's Agent granted the Archdiocese approval to partially raze four historic townhouses.[2] *See* D.C.Code §§ 5–1001 (1994 Repl.) *et seq.*

Petitioners appealed the order, but this court dismissed the appeal because the petition for review had not been filed within thirty days of the order. *1742 N Street Co., et al. v. District of Columbia Zoning Comm'n*, No. 87–101 (D.C. April 8, 1988). Because of the appeal on the PUD order (which expired on April 8, 1988), the Director of the Building and Land Regulation Administration, Department of Consumer and Regulatory Affairs ("BLRA") advised the Archdiocese that the PUD order would not take effect until April 8, 1988. Thus, the new deadline for applying for a building permit would be April 8, 1990. Relying on this statement, the Archdiocese submitted a building permit application sometime before April 8, 1990, but after the original deadline of January 16, 1989. Furthermore, in 1989 the Council for the District of Columbia amended the Comprehensive Plan and designated the land use category for the area including the site of the intervenor's PUD a

"mixed use medium density residential and medium density commercial." *See* 37 D.C. Reg. 55, 83 (January 5, 1990). The PUD, which authorized the construction of a 114-foot structure when the site was a high density commercial designation, was now contrary to the new land use category.[3]

On October 2, 1990, after the original deadline for the building permit expired, the Archdiocese requested an extension of time to begin construction. In its January 14, 1991 order, the Zoning Commission noted that even though the BLRA had no authority to toll the PUD order, the Zoning Commission would treat the extension request as if it had been timely filed. The order stated that "the validity of Zoning Commission Order No. 496 is **EXTENDED** for a period of **two years**, that is, until April 8, 1992, and the period for beginning construction shall begin not later than April 8, 1993."[4] Petitioners opposed the extension, but they did not appeal the extension order.

On November 25, 1992, the Archdiocese filed another request for a two-year extension of the PUD, citing bad market conditions as a cause for the delay in construction. Petitioners, ANC, the General Federation of Women's Clubs, and City Councilmember Jack Evans, opposed this request, but none requested a hearing.[5] On May 4, 1993, the Zoning Commission asked Corporation Counsel for advice regarding whether it should

2. The Mayor's Agent granted demolition permits to the Archdiocese on December 27, 1987.

3. The Zoning Commission, in 1991, adopted an overlay district known as the Dupont Circle Overlay District (DCOD) which applies to the PUD site. 11 DCMR §§ 1500 (1994) *et seq.* All PUDs approved in the DCOD must conform to specific height and floor ratio limits and be comprised of one acre in any mixed-use zone and one-half acre in any other zone. The petitioners claim that the PUD conflicts with the DCOD except for the acreage requirement.

4. Nothing in the order stated that a second building permit had to be filed by April 8, 1992, and there is no indication in the record that one was filed within this time period. The second extension order stated, however, that "[b]y Z.C. Order No. 496–A dated January 14, 1991, the Zoning Commission approved the extension of the validity of the PUD until April 8, 1992, and if an application for a building permit is filed not later than this date, the validity of the PUD was extended until April 8, 1993 for construction to

begin." The order also indicated that the intervenor filed a building permit on April 8, 1990, thus satisfying its requirement and extending the date of construction until April 8, 1993.

5. The Archdiocese contends that petitioners never requested a hearing, and thus failed to preserve their claim on appeal. Petitioners referred to a hearing in its letter of March 22, 1993, to the Zoning Commission, which stated "the Applicant [Archdiocese] objects to any further public hearing in this case. If the Zoning Commission determines that the existing record is insufficient to make an informed decision and the Applicant objects to the Commission hearing further evidence, the Commission should simply deny the requested extension, since the Applicant has the burden to establish 'good cause.'" Moreover, the Zoning Commission in asking Corporation Counsel for advice as to whether a hearing should be held, apparently understood a public hearing was being sought.

conduct a hearing to establish good cause for the extension. Meanwhile, the Office of Planning evaluated the extension request and issued a report on February 24, 1993, advising the Zoning Commission to grant the extension. The Office of Planning stated that the extension should be granted even though the PUD was inconsistent with the amendment to the Comprehensive Plan restricting the maximum height of a structure to 90 feet.[6] Moreover, the Office of Planning noted that the Dupont Circle Overlay District regulations, although inconsistent with the PUD, were to be applied to subsequent PUDs only. Ultimately, the Zoning Commission granted the extension without a hearing on June 14, 1993, pursuant to Order 496–B. The extension stated that the intervenor must file an application for a building permit by April 8, 1994 and begin construction by April 8, 1995. Petitioners are now appealing this second extension.

## II.

The Archdiocese argues that this is not a contested case, and therefore this court lacks jurisdiction to review the order of the Zoning Commission. Petitioners, on the other hand, contend that all proceedings regarding PUDs are contested cases pursuant to 11 DCMR § 3022.1 (1994). The first question here is whether the decision made by the Zoning Commission to extend the PUD is a separate proceeding or a procedural outgrowth of the original PUD application hearing.

The District of Columbia Administrative Procedure Act (DCAPA) confers the right to direct judicial review of an agency action by this court upon any person adversely affected by an order or decision in a "contested case." D.C.Code § 1–1510(a)(1992). The statute defines a contested case as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by law ... or by constitutional right, to be determined after a hearing before the Mayor or before an agency...." D.C.Code § 1–1502(8) (1992). Petitioners argue that the extension of a PUD order is part of the original PUD application which under a regulation is definitively a contested case. 11 DCMR § 3022.1 (1994).

■ The Zoning Regulations state that contested case hearings apply to "applications for planned unit developments." 11 DCMR § 3022.1 (1994). In arguing that this should apply to all proceedings involving PUDs, petitioners say that "the proper focus is on the nature of the entire proceeding, not individual bits or pieces of a proceeding which may result in a judicially reviewable order." We agree that what we have before us is simply a post-hearing aspect of a contested case involving the PUD hearing, and there is no reason to separate it from the original contested case for jurisdictional purposes. This PUD extension is similar to a post-judgment hearing in a civil case. In the latter, it is still the same case, with the same case number. The analogy is that here the Archdiocese was simply asking to amend the effective date of the St. Matthew's PUD (a contested case) by granting an extension of the validity of the order granting the PUD. Consequently, this court has jurisdiction to decide this appeal. *See Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169, 176–77 (D.C.1990).[7]

## III.

■ The Zoning Commission may grant a PUD extension upon a finding of "good cause shown." 11 DCMR § 2406.10 (1994). In its order, the Zoning Commission noted that it would not hold a public hearing "because the Zoning Regulations do not define or set forth criteria that establish 'good cause shown' " to warrant a PUD extension.[8] Although the

---

6. The Zoning Commission, in its original approval of the PUD application, noted that the height of the building shall not exceed 114 feet.

7. If this extension of the contested case were not considered to be also a contested case, the result would be to compel an appeal on the extension issue to be lodged in the trial court, with a second appeal permitted to this court. Conceivably, this would permit simultaneous appeals in two different courts.

8. The void in the Zoning Commission Regulations in relation to "good cause shown" on an extension request should not continue to be considered by the Zoning Commission as an acceptable basis for the agency's inaction. We note the Zoning Commission has in the past indicated an

Zoning Commission expressed an intent to further consider in the future what constitutes "good cause shown" with respect to a PUD extension proceeding, for purposes of the present extension the Commission noted that " 'fairness' would dictate that the review of this request for an extension of the validity of a PUD should be based solely on demonstrating 'good cause' to the satisfaction of the Commission, as has been the case in all such previous similar requests." Because we conclude that the extension of the PUD order is actually a prolongation of a contested case, we remand the proceeding to the Zoning Commission to determine whether good cause was shown to extend the PUD order as required by 11 DCMR § 2406.10.[9] This will require the Commission to review its policies regarding "good cause" shown and decide whether some type of hearing is required in order to effectively determine whether such "good cause" exists.

■ If, in a proceeding to determine whether an effective date extension of the PUD should be granted, it becomes necessary to resolve a material factual conflict [10] which has been generated by the parties, then this would establish the need of a limited evidentiary hearing for the purpose of resolving the particular factual conflict, so that an informed determination may be made upon the request for the extension of the PUD. On the other hand, the issue on extension of the validity perhaps may be resolved adequately from a review of the documents filed by the parties and, if advisable, by oral presentation of counsel to elucidate the positions taken in the documents. While it is settled that a PUD proceeding is a contested case, *e.g.*, *Rafferty, supra*, 583 A.2d at 176–77, this is not to say that an adjudicative, testimonial proceeding is necessarily re-

quired in a post-decision hearing such as the request for an extension of the PUD, just as this would not necessarily be required in a post-judgment proceeding on the civil side of the trial court unless a material factual conflict required it.[11] The nature of the proceeding will depend primarily upon whether there are any material factual disputes requiring an evidentiary hearing. *See, e.g., Moreau v. F.E.R.C.*, 299 U.S.App. D.C. 168, 180, 982 F.2d 556, 569 (1993); *Citizens for Allegan County, Inc. v. Federal Power Comm'n*, 134 U.S.App. D.C. 229, 232, 414 F.2d 1125, 1128 (1969). If there are no material factual disputes, there is no need for an evidentiary hearing on an extension request and a submission of documents, perhaps supported by oral argument, would suffice.

■ Concerning the remaining contention on this appeal, *viz*, that the Zoning Commission did not have the authority to extend the validity of the PUD order a second time because the PUD order had expired, the agency apparently concluded, in effect, that it accorded with its concept of "good cause shown" to give controlling consideration to the fact that, in this instance, the Building and Land Regulation Administration Division had advised in writing that the particular PUD order would remain in effect until April 8, 1990. We believe it was within the authority of the agency to conclude that receipt of this official statement should reasonably be viewed as "good cause shown," as it was then being viewed, for an extension of the effectiveness of that PUD order.

■ We note, however, that the Zoning Commission indicated in this proceeding that in addressing the absence of an agency rule

---

intention to remove this void but, so far as it appears, still has yet to do so, unfortunately.

9. At its monthly meeting on May 5, 1993, the Zoning Commission expressed its interest in reconsidering the issue of what is "good cause" shown and how it should treat requests to extend the validity of PUDs. Subsequently, the Office of Zoning proposed various amendments to the PUD extension process, expanding on what is "good cause" shown. Proposed amendments, however, apparently have still not yet been adopted so far as it appears. An absence of such

regulations should hardly be regarded indefinitely as a basis for denying a hearing if it is otherwise indicated.

10. We refer to a "material factual conflict" to distinguish it from a conflict between the parties in relation to facts which have no real consequence.

11. A post-decisional hearing may be suitably controlled and not permitted to approach a full scale retrying of the original issues.

governing determination of "good cause shown" on extension requests, the Commission stated specifically that it would "further consider the issue of what constitutes 'good cause' shown in a separate proceeding." So far as it appears, there is as yet no such agency rule of procedure. Petitioners requested a hearing before the Commission in this proceeding. The Commission implicitly acknowledges that there should be a rule in relation to extension requests and this court is of the same view. It would therefore be expected that the Commission will proceed to adopt a rule to govern these extension requests.[12]

*Remanded for further proceedings.*

12. Petitioners also claim that the Zoning Commission failed to adequately consider the amended Comprehensive Plan, the Dupont Circle Overlay District regulations (DCOD), and the ANC's recommendations. However, in its order extending the validity of the PUD, the Zoning Commission adopted the report issued by the Office of Planning, which evaluated the existing PUD under the amended Comprehensive Plan and recommended the extension of the validity of the PUD. The Office of Planning found that the PUD was consistent with the amended Plan except that the PUD exceeded the amended Plan's maximum height requirement of 90 feet. The Office of Planning found that any changes in the DCOD regulations affected subsequent PUDs only, and thus had no effect on the Archdiocese's PUD. The Zoning Commission referred to the ANC's objections and recommendations in its Order, but ultimately declined to follow the ANC's recommendations. Consequently, we conclude that the Zoning Commission adequately considered the amended Comprehensive Plan, DCOD regulations, and ANC recommendations.