DISTRICT OF COLUMBIA PRESER-
VATION LEAGUE, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF CONSUMER & REGULA-
TORY AFFAIRS, Respondent,

and

Back Bay Restaurant Group,
Inc., Intervenor.

No. 95–AA–867.

District of Columbia Court of Appeals.

Argued May 7, 1997.

Decided May 29, 1998.

Richard B. Nettler, with whom Andrea C. Ferster, Washington, DC, was on the brief, for petitioner.

Charles F.C. Ruff, Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, filed a statement in lieu of brief for respondent.*

Daniel F. Rinzel, with whom David T. Ralston, Jr., Washington, DC, was on the brief, for intervenor.

Before WAGNER, Chief Judge, and TERRY, Associate Judge, and PRYOR, Senior Judge.

WAGNER, Chief Judge:

Petitioner, the District of Columbia Preservation League (Preservation League), seeks review of a decision of the Department of Consumer and Regulatory Affairs (Mayor's agent) authorizing the issuance of a permit to intervenor, Back Bay Restaurant Group, Inc. (Back Bay), for partial demolition of the Vigilant Firehouse Building (the Vigilant), a historic landmark located at 1066 Wisconsin Avenue, N.W., in the District of Columbia, after the demolition had occurred. The Preservation League argues that the Mayor's agent's approval of the issuance of a permit for partial demolition of the building is inconsistent with the Historic Landmark and Historic District Preservation Act of 1978 (Preservation Act), D.C. Law No. 2–144, codified at D.C.Code §§ 5–1001 through – 1015 (1994). Specifically, the Preservation League argues that the Mayor's agent improperly considered the demolition in components and mischaracterized the work as alterations, thereby circumventing the proper application of the statute, and that Back Bay failed to meet its burden of proof for issuance of the permit. It also contends that the Mayor's agent abused her discretion in striking from the record one of District of Columbia Department of Consumer Regulatory Affairs' (DCRA) opinions appended to the Preservation League's proposed findings of fact and conclusions of law after the record had been closed. We affirm.

I.

A. *Facts and Procedural History*

The Vigilant, which is located in the Georgetown Historic District, is the oldest firehouse in the District. It was constructed originally as a two-room structure in 1844, but several additions were added, mostly in the late 19th and early 20th centuries, which doubled its size. A two-story addition to the north side of the building resulted in the complete enclosure of the original exterior north wall of the building. The building was included in the National Register of Historic Places as a historic property in 1971.

The property had been vacant for approximately twelve years when Back Bay acquired it in 1992, planning to develop it as a restaurant. Back Bay found that the upper portion of the south wall, collar ties in the gable connected to it, and the wood joists in the roof of the building's additions were severely deteriorated, containing dry rot and water damage. According to John Hildreth, a structural engineer, the south wall contained cracked bricks and crumbling mortar and severe structural damage which precluded its salvage, and he recommended taking it down. Back Bay considered various methods for repairing the wall, but concluded that repair was not feasible. Back Bay determined that the condition of the wall necessitated its disassembly brick by brick. In January 1994, the collar ties supporting the roof collapsed.

Back Bay hired Jeffrey Cherry to assist in obtaining construction permits in connection with converting the Vigilant into a restaurant. With its application for permits, Back Bay submitted architectural drawings. The Technical Review Branch of the DCRA approved the application, with the notation "permit for *interior* demolition only." (Emphasis added.) There was evidence that officials reviewing the plans did not understand that the south wall was an exterior wall, as it

---

* The District of Columbia relies upon the decision of the Mayor's agent, the Department of Consumer and Regulatory Affairs and any defense thereof by intervenor.

was set back from the property line. The Old Georgetown Board of the Commission on Fine Arts (CFA) approved the application on April 6, 1994, with a statement in its transmittal letter, "No objection to issuance of permit for proposed demolition associated with approved plans. The main roof structure will be retained and repaired where necessary as shown...." The CFA approved the demolition of the north wall, which it knew had been a historic exterior wall. DCRA issued the permit on April 21, 1994. Believing that the alteration of the south wall was authorized and that no demolition permit was required, Back Bay completed removal of the north and south walls by July or August 1994.

Concerned about the extent of the demolition, the Preservation League notified DCRA that exterior walls for the Vigilant had been demolished. Finding no permit for exterior demolition, DCRA issued Back Bay a stop work order on October 26, 1994, which stated that the work should cease until Back Bay obtained the proper permit. On October 28, 1994, Back Bay filed an application for partial demolition of the second floor portion of the south wall. DCRA permitted Back Bay to construct a temporary enclosure for the south wall.

**B.** *The Decision of the Mayor's Agent*

The Mayor's agent concluded that the south wall no longer contributed to the historic landmark because it had been torn down previously and was severely deteriorated, and the majority of the bricks, of which it was constructed, were beyond repair. She determined that the removal of the wall and its reconstruction with both original and matching bricks, as Back Bay intended, would enhance the Vigilant. The Mayor's agent also found that Back Bay had met its burden of demonstrating that "partial demolition [would] permit the retention, enhancement, restoration and adaptation for current use of the Vigilant building." Having concluded that demolition of the south wall "was necessary in the public interest by virtue of its consistency with the purposes of the Act[,]" the Mayor's agent granted Back Bay's request for a permit for partial demolition. She also determined that no demolition per-

mit was required for removal of the north wall because it was an interior element for which no permit was required under the Act.

## II.

### A. *Standard of Review*

We will not disturb the factual findings of the Mayor's agent if they are supported by substantial evidence in the record. *District of Columbia Preservation League v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 646 A.2d 984, 989 (D.C. 1994) (citations omitted). "The Mayor's agent, like any administrative agency, must operate within the applicable statutory constraints in performing his [or her] assigned task." *Id.* at 990 (citing D.C.Code § 1–1510(a)(3)(C) (1992)) (other citations omitted). While our review of an agency's legal determinations is *de novo*, we will accord deference to an agency's interpretation of the statute which it is responsible for administering if it " 'is reasonable and not plainly wrong or inconsistent with its legislative purpose.' " *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899 (D.C.1995) (quoting *McCulloch v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 1244, 1248 (D.C.1991)) (other citations omitted). However, where the agency has not identified the question of statutory construction or construed its terms, deference is inappropriate. *Id.* (citations omitted).

### B. *Statutory Framework*

The Preservation Act provides in pertinent part that no permit for the demolition of a historic landmark or a building or structure in a historic district may be issued "unless the Mayor finds that issuance of the permit is necessary in the public interest...." D.C.Code § 5–1004(e). Section 5–1002(10) defines "necessary in the public interest" to mean "consistent with the purposes of this subchapter as set forth in § 5–1001(b)...." In turn, § 5–1001(b)(2)(A) provides that one of the purposes of this Act, with respect to historic landmarks is "[t]o retain and enhance historic landmarks in the District of Columbia and to encourage their adaptation for current use[.]"

## III.

 The Preservation League argues that the Mayor's agent erred in applying the statute by taking into account improper factors in determining to approve the issuance of the demolition permit. Specifically, it contends that the Mayor's agent balanced the interests involved and considered safety factors and refurbishing costs, while the statute restricts the inquiry, under the circumstances presented here, to whether demolition would either "retain and enhance historic landmarks in the District of Columbia" or "encourage the restoration of historic landmarks." However, these are the very grounds upon which the Mayor's agent relied, and they are cited in the decision and order. After making relevant factual findings, the Mayor's agent found that the demolition of the south wall did not detract from the salient historic qualities of the building, which retained many of its original features. Additionally, the Mayor's agent concluded that

the removal of the wall, coupled with [Back Bay's] express intention to rebuild the wall with matching brick[,] as well as many of the original bricks, will retain and enhance the Vigilant, much more so than in its prior deteriorated condition.[1]

The removal of the wall encourages the Vigilant's adaptation for its current use as a restaurant as well as the restoration of historic landmarks, because of its overall improvement while keeping the historic facade (i.e.[,] cupola, roof, original bricks etc.).

The Mayor's agent authorized the issuance of the permit for demolition of the south wall, having determined that the south wall no longer contributed to the historic landmark and that its partial removal would permit "the retention, enhancement, restoration and adaptation for current use of the Vigilant building."[2] Unlike *District of Columbia Preservation League, supra,* relied upon by the Preservation League here, the Mayor's agent enumerated and relied upon the relevant statutory factors for the decision and did not "balance the interests" by taking into account costs and safety factors. 646 A.2d at 990. While the Mayor's agent recognized in the case now before the court that the wall was beyond repair, containing bricks which crumbled to dust in one's hand, the decision was clearly guided by the fact that the south wall could not contribute to, or enhance, this landmark in such an irreparable condition.[3] We do not view this finding and its application as consideration of an improper factor by the Mayor's agent similar to the one underlying the Mayor's agent's decision in *D.C. Preservation League.*

## IV.

The Preservation League also argues that the Mayor's agent erred in making a distinction between interior and exterior parts of the building. Thus, it contends, the Mayor's agent did not consider the demolition in its totality, resulting in the failure to evaluate whether the entire demolition was consistent with the purposes of the Act. The Preserva-

---

1. However, the Mayor's agent recognized that she had no authority "to impose remedial measures upon [Back Bay] regarding future restoration."

2. The Preservation League argues briefly that demolition of a substantial portion of a historic landmark, as distinguished from additions to the landmark, is never consistent with the legislative purpose of the Act involved here. However, the Act permits partial demolition of a historic structure, provided that it retains and enhances the landmark and encourages adaptation for current use. *See* D.C.Code §§ 5–1001(b)(2), –1004(e).

3. The Preservation League contends that the deteriorated status of the wall could not be evaluated because it had already been demolished at the time of the hearing. The testimony of witnesses concerning the condition of the wall, tested

through cross-examination, is a traditional and proper basis upon which the factfinder can make factual determinations about its condition. The court's recognition of the propriety of testimonial evidence to establish prior conditions is not intended to encourage or condone circumvention of the process required of property owners who seek to undertake the demolition and alteration of historic properties. However, this case is unique in that the plans submitted by Back Bay with its permit applications, which were approved, showed removal of the north wall and the second story south wall. DCRA approved the plans, although their agents indicated that they assumed only interior walls were involved based on the drawings. In turn, Back Bay believed the demolition was authorized.

tion League takes the position that the Act focuses on the extent of the demolition and not whether interior or exterior elements are being demolished. It relies for support of its argument, in part, upon the language in D.C.Code § 5–1002(3), which defines "demolition" as "the razing or destruction, entirely *or in significant part,* of a building or structure and includes the removal or destruction of any facade of a building or structure." (Emphasis added.) Even assuming that the Preservation League is correct in its interpretation of the statute, the factual predicate for its argument is not met because the Mayor's agent found only partial demolition, and the record supports that finding. On the other hand, the record does not support a finding of substantial demolition. In any event, the Mayor's agent appears to have considered the entire project in assessing whether the demolition would ultimately enhance the historic landmark and encourage its readaptive use.

■ We find no basis to challenge the distinction made by the Mayor's agent between the treatment of interior and exterior structures. The term "alteration" is defined as

> a change in the *exterior* appearance of a building or structure or its site, *not covered by the definition of demolition,* for which a permit is required; except, that "alter" or "alteration" also means a change in any interior space which has been specifically designated as an historic landmark.

D.C.Code § 5–1002(1) (emphasis added). The Mayor's agent concluded that the north wall had become an interior wall which did not have a historic landmark status. We do not understand the Preservation League to challenge the fact that the north wall did not have any independent historical designation. Although the wall had once been an exterior wall, it was not such at the time the building was designated as a historic landmark. At that time, it was an interior wall, and it was not specifically designated as a historic landmark. Therefore, it was reasonable for the Mayor's agent to conclude, under the Act, that the north wall was an interior element which required only the permit previously issued to Back Bay for removal of the wall. As an interior wall, it was not subject to the provisions of the Act, which covers only exterior structures, or at least substantial demolition including exterior structures of a historic landmark.

## V.

Finally, the Preservation League argues that the Mayor's agent erred in striking from the record two documents appended to its proposed findings of fact after the record in the case had closed.[4] The Preservation League never moved to reopen the record, a factor weighing against its claim that the Mayor's agent's action in rejecting the documents was arbitrary and capricious. *See* 10 DCMR § 2522.2 (providing for closing of record following hearing). In accordance with traditional administrative agency practice, "[o]nce a hearing has been held, it will not generally be reopened for the purpose of introducing new or additional evidence which could have reasonably been presented at the hearing." *Jones v. District of Columbia Dep't of Employment Servs.,* 584 A.2d 17, 19 (D.C.1990) (internal quotation marks and citation omitted). Although post-hearing evidence may be allowed, good cause generally must be shown for the failure to produce it at the hearing. *Id.* (citations omitted). The decision was not arbitrary and capricious, as the Preservation League claims, or an abuse of discretion; therefore, we find no basis to overturn the Mayor's agent's decision in this regard.

For the foregoing reasons, the decision of the Mayor's agent hereby is

*Affirmed.*

---

4. The documents were a copy of the Secretary of Interior's Standards for Treatment of Historic Properties and an opinion letter from the Building and Land Regulation Administration, DCRA, concerning distinctions between demolitions and alterations.