**HOTEL TABARD INN, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER & REGULATORY AFFAIRS, Respondent,**

**Archdiocese of Washington, D.C., et al., Intervenors.**

**Residential Action Coalition, et al., Petitioners,**

v.

**District of Columbia Zoning Commission, Respondent,**

**Archdiocese of Washington, D.C., et al., Intervenors.**

**Nos. 95–AA–502, 98–AA– 18 and 98–AA–1021.**

District of Columbia Court of Appeals.

Argued April 21, 1999.
Decided March 23, 2000.

Richard B. Nettler, with whom Andrea S. Ferster, Washington, DC, was on the brief, for petitioners.

Jo Anne Robinson, Principal Deputy Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondents.

Whayne S. Quin, with whom Norman M. Glasgow, Jr., John T. Epting, Paul J. Kiernan, and Joshua I. Schwartz, Washington, DC, were on the brief, for intervenors.

REID, Associate Judge:

These consolidated appeals concern decisions of respondents, the District of Columbia Department of Consumer and Regulatory Affairs ("the DCRA") and the District of Columbia Zoning Commission ("the Commission"), relating to a planned unit development ("the PUD"), the St. Matthew's Cathedral project ("the project"). In No. 95–AA–502, petitioner, Hotel Tabard Inn, challenges decisions of the DCRA, the Mayor's Agent for D.C. Law 2–144 ("the Mayor's Agent") and the Historic Preservation Review Board ("the HPRB"), dated August 25, [sic]1994, December 8, 1994, and January 11, 1995 which approved the request of intervenor, the Archdiocese of Washington, D.C. ("the Archdiocese") for demolition permits to raze existing townhouses and construction permits to complete the project. In Nos. 98–AA–18 and 98–AA–1021, petitioners, Residential Action Coalition, Dupont Circle Citizens Association and Hotel Tabard Inn, take exception to two Commission orders, No. 496–D and No. 496–E which extended the effective date of the PUD order authorizing the project. We affirm the orders on review.

## FACTUAL SUMMARY

This contentious matter has a long procedural and decisional history involving several entities of the District government—the Mayor's Agent for D.C. Law 2–144, the HPRB, the DCRA, the Commission, and the Office of Planning. The voluminous record on review reveals the following pertinent facts and conclusions.

On November 3, 1986, the Commission approved the PUD, a "mixed-use development including residential, office, retail and institutional uses," to be constructed in the 1700 block of Rhode Island Avenue, N.W.; the approval was subject to certain "guidelines, conditions and standards." Zoning Commission Order No. 496, November 3, 1986 ("Order No. 496"). Paragraph 2 of Order No. 496 referred to "[t]he applicant" as the Archdiocese of Washington, D.C., and "the developer" as K & G Associates Rhode Island Avenue Limited Partnership. The Commission specified that Order No. 496 would be valid for two years after its January 16, 1987 effective date. An untimely appeal of Order No. 496 was dismissed by this court in 1988.

On December 22, 1987, after appropriate review and approval by the HPRB, the Mayor's Agent for D.C. Law 2–144, the Historic Landmark and Historic District Protection Act of 1978 ("the HLHDPA"), D.C.Code §§ 5–1001 *et seq.* (1994), determined that the project not only is one of "special merit" under the HLHDPA, but also is consistent with the Comprehensive Plan of the District of Columbia. Consequently, the Mayor's Agent ordered the issuance of demolition permits for razing the townhouses. Subsequently, demolition permits were issued in February 1989. Beginning in 1990, the Archdiocese requested extensions of Order No. 496.

On October 2, 1990, the Archdiocese requested a two-year extension of Order No. 496, citing the time it took to resolve the appeal to this court. The request was granted and the Order was extended to April 8, 1993. *See* Zoning Commission Order No. 496–A, January 14, 1991, at 3. The Archdiocese requested a second extension on November 25, 1992, for the purpose, *inter alia,* of obtaining lead tenants and financing for the project. Despite opposition to the request for an extension, the Commission extended Orders No. 496 and 496–A to April 8, 1994, in part, as "in the best interest of the District of Columbia," and also because the extension is "not unreasonable" given "the favorable processing of previous extension requests and the lack of regulations that would assist in the review of [extension] requests." *See* Zoning Commission Order No. 496–B, June 14, 1993, at 5. The Hotel Tabard Inn and others petitioned this court for a review of the extension.

After the second extension was granted and while the petition for review was pending in this court, the Archdiocese was informed that it would have to obtain new demolition permits. In that regard, a new evidentiary hearing was held on November 22, 1993, to examine changes to the design of the project and the financial ability of the applicant. The Mayor's Agent issued an order on August 19, 1994, determining that the "Applicant [described as K & C Associates Rhode Island Avenue Limited Partnership and the Archdiocese of Washington, D.C.], possesses sufficient financial ability to complete the project." *See* Decision and Order of the Mayor's Agent, August 19, 1994, at 4. The proposed design changes were found to constitute a "substantial change" in the building design and were referred to the HPRB. *Id.* At a December 8, 1994 hearing, the HPRB approved the design changes, as recommended by a report from its staff. Subsequently, in early January 1995, new demolition permits were issued for the town houses. The Hotel Tabard Inn filed a petition for review on May 1, 1995, challenging the August and the December 1994 decisions and the issuance of the demolition permits.

On February 16, 1995, the Archdiocese requested a third extension of the Commission's orders (covering Orders No. 496, 496–A and 496–B). As a reason for the extension request, they cited the petition for review of Order No. 496–B which was pending in this court. While the request for extension was pending before the Commission, this court issued an *opinion* regarding its review. We remanded the matter to the Commission "to determine whether good cause was shown to extend

the PUD order as required by 11 DCMR § 2406.10." *Hotel Tabard Inn v. District of Columbia Zoning Comm'n*, 661 A.2d 150, 154 (D.C.1995). We stated that the Commission was required "to review its policies regarding 'good cause' shown and [to] decide whether some type of hearing is required in order to effectively determine whether such 'good cause' exists." *Id.*

Approximately one month after our decision, the Commission approved the Archdiocese's third request for an extension. Despite opposition, the Commission extended Orders No. 496, 496–A and 496–B for a two year period, or until April 1, 1996, because (1) "the applicant has demonstrated 'good cause' by documenting adverse market conditions and by providing substantial up front amenities," and because of the pending litigation; and (2) extension "is in the best interest of the District of Columbia and is consistent with the intent and purpose of the Zoning Regulations and Zoning Act." Zoning Commission Order No. 496–C, July 10, 1995, at 5. Petitions for review of the decision were filed with this court; however, the petitions were remanded to the Commission as a result of our decision in *Hotel Tabard Inn, supra*.

On March 20, 1997, the Archdiocese made a fourth request for extension of Order No. 496 and the related orders. The Archdiocese also asked the Commission to consider the petitions that this court remanded. In support of its request for extension, the Archdiocese cited as "good cause" for the requested extension the pending litigation and the difficulty of obtaining a lead tenant in light of the litigation. The Dupont Circle Citizens Association and the Residential Action Coalition opposed the extension, arguing, *inter alia*, that the extension request did not meet the "good cause" regulatory standards. The Zoning Commission granted the requested extension. Zoning Commission Order No. 496–D, November 10, 1997. The Commission declared that the Archdiocese's request was warranted under 11

DCMR § 2408.11(c) of its "good cause" regulations, promulgated on January 13, 1997, due to the pending litigation and "related actions beyond the applicant's control." Order No. 496–D at 6. The Commission also referenced the time it took to develop its "good cause" regulations. Moreover, the Commission found "that the applicant remains committed to the completion of the project, having already expended a large sum of money in actual development of the project." *Id.* at 7. There was no need for an additional hearing, the Commission concluded, because the report submitted by the Office of Planning "adequately addresses the effect of changes to the Comprehensive Plan, the Zoning Regulations and the Map." *Id.* Therefore, the Commission extended Orders No. 496, 496–A, 496–B and 496–C for another two years, or until April 8, 1998. A petition for review of the decision was filed with this court.

The Archdiocese requested a fifth extension of Order No. 496, and the related orders, for five years on February 27, 1998. As reasons for the request, it again cited the pending litigation and its continuing difficulty in marketing the project due to the ongoing litigation. The Dupont Circle Citizens Association, the Hotel Tabard Inn and the Residential Action Coalition opposed the requested extension on March 9, 1998, challenging, *inter alia*, the Archdiocese's reliance on the current litigation as "good cause," and pressing their belief that a hearing was required to address compliance with the Comprehensive Plan and other matters. About a week later, the same opposing entities informed the Commission about their discovery that K & C Associates "is no longer involved in the project," and contended that the absence of K & C Associates was material under 11 DCMR § 2408.10(b), thus necessitating a hearing to determine whether "the applicant has the ability or means to complete the project."

On April 13, 1998, the Commission extended Orders No. 496, 496–A, 496–B,

496–C, and 496–D for a three year period, or until April 8, 2001, for the application of a building permit; it also extended the time for beginning construction to April 8, 2002. Zoning Commission, Order No. 496–E, April 13, 1998. The Commission determined, *inter alia,* that: (1) "Under § 2408.11(c) [of the 'good cause' regulations], the applicant has demonstrated good cause for a time extension based upon the existence of pending litigation or such other conditions, circumstance or facts beyond the applicant's reasonable control which rendered the applicant unable to comply with the time limits of the PUD order," Order No. 496–E at 5; (2) "While the developer of the project was mentioned in Finding of Fact No. 2 of Order No. 496, the property owner and applicant has always been the Archdiocese of Washington, (D.C.).... The change in project developer ... is not·a substantial change in a material fact upon which the Zoning Commission based its original PUD approval," *id.;* (3) "[T]he applicant ... [has] already expended a large sum of money in actual development of the project[, and] ... has submitted substantial evidence regarding its provision of significant up-front amenities, as required by

Order No. 496," *id.* at 6; (4) "The applicant has submitted substantial evidence that there is good cause for a further PUD extension [ ] [because] [t]here is no question as to the pendency of litigation and the affidavit of the representative of the Archdiocese sufficiently demonstrates the effect that this has had on the ability to proceed," *id.;* and (5) "[T]here is no need for a further hearing" because the Commission adopted the report and analysis of the Office of Planning, a procedure implicitly approved in *Hotel Tabard Inn, supra,* 661 A.2d at 155 n. 12. *Id.* The Residential Action Coalition, Hotel Tabard Inn and the Dupont Circle Citizens Association filed a petition for review of Order No. 496–E on July 9, 1998.

We consolidated the cases presented for review and scheduled oral argument.[1]

## ANALYSIS

 "Our review of this matter is limited and narrow." *Reneau v. District of Columbia,* 676 A.2d 913, 917 (D.C. 1996); *see also Foggy Bottom Ass'n v. District of Columbia Zoning Comm'n,* 639 A.2d 578, 582 (D.C.1994) ( review of a

1. On April 20, 1999, one day prior to oral argument in these cases, the court received D.C.App. R. 28(k) correspondence from the Archdiocese contending that the court lacked jurisdiction in No. 98–AA–18 (relating to Commission Order No. 496–D) and No. 98–AA–1021 (pertaining to Commission Order No. 496–E). The Archdiocese contended that the issues presented were rendered moot by the Commission's January 11, 1999, amendment of its regulations. The amendment to the regulations, 11 DCMR § 2408.13, tolled the time limitations in 11 DCMR § 2408.8 and § 2409.9 until "final determination of the appeal." Further, the Archdiocese maintained that the court lacked jurisdiction in No. 95–AA–502 because the petition for review was untimely with respect to the Mayor's Agent's August 19, 1994, decision, and because neither the December 8, 1994, HPRB decision, nor the January 11, 1995, action of DCRA approving the demolition permits constituted contested cases.

We decline to consider this belated challenge to·our jurisdiction in this matter which

involves a review of decisions that took place well before the 1999 tolling amendment was adopted, an amendment that has no substantial impact upon the substance of the orders on review. Moreover, in *Hotel Tabard Inn, supra,* we considered the Archdiocese's "contested case" argument with respect to our jurisdiction in that case involving the validity of the Commission's second extension of the PUD order. We said, *inter alia:* "[W]hat we have before us is simply a post-hearing aspect of a contested case involving the PUD hearing, and there is no reason to separate it from the original contested case for jurisdictional purposes.... Consequently, this court has jurisdiction to decide this appeal." 661 A.2d at 153 (citing *Rafferty v. District of Columbia Zoning Comm'n,* 583 A.2d 169, 176–77 (D.C. 1990)). In a footnote, we added: "If this extension of the contested case were not considered to be also a contested case, the result would be to compel an appeal on the extension issue to be lodged in the trial court, with a second appeal permitted to this court. Conceivably, this would permit simultaneous appeals in two different courts." *Id.* at 153 n. 7.

Zoning Commission order is limited). "'We must uphold the Mayor's Agent's decision if the findings of fact are supported by substantial evidence in the record considered as a whole and the conclusions of law flow rationally from these findings.'" *Reneau, supra,* 676 A.2d at 917 (quoting *Kalorama Heights Ltd. Partnership v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 655 A.2d 865, 868 (D.C.1995) (other citations omitted)). Furthermore, "[u]pon review of an order of the Commission, the court does not reassess the merits of the decision, but rather must determine whether findings supporting the decision are 'arbitrary, capricious or an abuse of discretion, not supported by substantial evidence.'" *Foggy Bottom, supra,* 639 A.2d at 584 (quoting *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n,* 355 A.2d 550, 560 (D.C.), *cert. denied,* 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976)). Moreover, "[w]hile our review of an agency's legal determinations is *de novo,* we will accord deference to an agency's interpretation of the statute which it is responsible for administering if it 'is reasonable and not plainly wrong or inconsistent with its legislative purpose.'" *District of Columbia Preservation League v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 711 A.2d 1273, 1275 (D.C.1998) (quoting *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899 (D.C.1995) (other citation omitted)).

*The Archdiocese's Financial Capacity To Complete The Project*

First, petitioners challenge the conclusions of the Mayor's Agent that the Archdiocese has the financial ability to complete the project, and contend that a new,

separate determination of "special merit" of the project was required. In essence, they assert that because K & C Associates no longer is involved in the project, there is no demonstrated financial ability to complete it since the Mayor's Agent relied on the personal assets of K & C Associates in approving the project, and the Archdiocese has made no commitment to use its own resources. Furthermore, they argue that the January 11, 1995, decision authorizing issuance of the demolition permits should not have been made without a new determination of "special merit" under D.C.Code § 5–1004(e). The Archdiocese primarily maintains that the Mayor's Agent has made consistent factual findings that the Archdiocese has the financial ability to complete the project.

[5] The record shows that the Mayor's Agent and the Commission both have reaffirmed the Archdiocese's financial capacity to complete the project. On August 19, 1994, the Mayor's Agent made the determination, which was supported by record evidence. Moreover, in considering the Archdiocese's fifth extension request, the Commission stressed that the only actual applicant for the project is the Archdiocese, and its commitment to the project was amply evidenced by the substantial sums the Archdiocese has spent on the project and the "significant up-front amenities" it has provided. Our attention has been directed to no regulatory or statutory provision requiring the property owner to acquire a development partner in order to demonstrate the financial capacity to complete a project.

With respect to the issue as to whether a new determination of special merit was required under D.C.Code §§ 5–1004(e) [2] or 5–1007(f), [3] the Mayor's Agent

**2.** Section 5–1004(e), pertaining to demolition permits, provides that: "No permit shall be issued unless the Mayor finds that issuance of the permit is necessary in the public interest, or that failure to issue a permit will result in unreasonable economic hardship to the owner." Under § 5–1002(10), "'[n]ecessary in

the public interest' means consistent with the purposes of this subchapter ... or necessary to allow the construction of a project of special merit." Section 5–1002(11) specifies that: "Special merit means a plan or building having significant benefits to the District of Columbia or to the community by virtue of

referred the matter of the design changes to the HPRB on August 19, 1994, with specific instructions to consider only the changes specified in paragraphs 2, 3, 4, and 5 of its order, that is, the addition of windows on the north, east and south elevations, and the increase in the setback on the south elevation. We see nothing in the applicable statutory and regulatory provisions precluding the limited review ordered by the Mayor's Agent and conducted by the HPRB. Nor could the Mayor's Agent's order be viewed as an open invitation to relitigate the "special merit" conclusion made in 1987, because "the doctrine of issue preclusion ... prevents the same parties from relitigating an issue actually decided in a previous final adjudication, whether on the same or a different claim." *Rhema Christian Ctr. v. District of Columbia Bd. of Zoning Adjustment,* 515 A.2d 189, 193 (D.C.1986) (citations omitted).

Not only did the staff of the HPRB review the specified design changes and recommend their approval, but a December 8, 1994, hearing before the HPRB also focused on those changes. Witnesses testified for the Archdiocese and for those opposing the project. Those opposing the project sought to address issues beyond those authorized by the Mayor's Agent, such as the impact of issuing demolition permits. After the testimony had been completed, the HPRB approved the design changes, with two abstentions.

This court is not in a position to second guess the Mayor's Agent or the HPRB as to whether the few design changes concerning windows and a setback required a new determination of special merit based

upon exemplary architecture. This matter is squarely within the expertise of the Mayor's Agent and the District agencies responsible for historic preservation, construction and zoning matters. On this record we see no reason why we should not defer to that expertise. *See District of Columbia Preservation League, supra,* 711 A.2d at 1275. Indeed, we are not persuaded that § 5–1007(f), concerning new construction permits, nor the "construction of a project of special merit" aspect of the definition of "necessary in the public interest" were applicable at all to the December 1994, proceedings before the Mayor's Agent and the HPRB.

*The Commission's Compliance With The Remand Order*

Second, petitioners complain that the Commission failed to comply with this court's remand order in *Hotel Tabard Inn, supra,* and assert that a public hearing should have been held on remand. Specifically, petitioners argue that a good cause determination was not made with respect to the second and third extensions, and that a hearing was required to consider disputed facts relating to the fourth and fifth extensions. The Archdiocese contends that the Commission complied with the remand order, and that no hearing was required.

We said in *Hotel Tabard Inn, supra:*

Because we conclude that the extension of the PUD order is actually a prolongation of a contested case, we remand the proceeding to the Zoning Commission to determine whether good cause was shown to extend the PUD order .... This will require the Commission to re-

---

exemplary architecture, specific features of land planning, or social or other benefits having a high priority for community services."

**3.** Section 5–1007(f) relating to new construction permits provides:

The permit shall be issued unless the Mayor, after due consideration of the zoning laws and regulations of the District of Columbia, finds that the design of the building and the character of the historic district

or historic landmark are incompatible: provided, that in any case in which an application is made for the construction of an additional building or structure on a lot upon which there is presently a building or structure, the Mayor may deny a construction permit entirely where he finds that any additional construction will be incompatible with the character of the historic district or historic landmark.

view its policies regarding "good cause" shown and decide whether some type of hearing is required in order to effectively determine whether such "good cause" exists.

If, in a proceeding to determine whether an effective date extension of the PUD should be granted, it becomes necessary to resolve a material factual conflict which has been generated by the parties, then this would establish the need of a limited evidentiary hearing for the purpose of resolving the particular factual conflict, so that an informed determination may be made upon the request for the extension of the PUD. On the other hand, the issue on extension of the validity perhaps may be resolved adequately from a review of the documents filed by the parties and, if advisable, by oral presentation of counsel to elucidate the positions taken in the documents. While it is settled that a PUD proceeding is a contested case, this is not to say that an adjudicative, testimonial proceeding is necessarily required in a post-decision hearing such as the request for an extension of the PUD, just as this would not necessarily be required in a post-judgment proceeding on the civil side of the trial court unless a material factual conflict required it .... If there are no material factual disputes, there is no need for an evidentiary hearing on an extension request and a submission of documents, perhaps supported by oral argument, would suffice.

661 A.2d at 154 (footnotes and citations omitted). Following our June 1995 remand, the Commission proceeded to develop "good cause" regulations and announced those regulations on January 13, 1997. Section 2408.10(c) of 11 DCMR authorized the Commission to extend a PUD order if "[t]he applicant demonstrates with substantial evidence that there is good cause for such extension, as provided in Subsection 2408.11." Section 2408.11 set forth the grounds for good cause, including those pertaining to "changes in economic and market conditions beyond the applicant's reasonable control" and "pending litigation." [4] Section 2408.12 specified when a public hearing was required:

> The Zoning Commission shall hold a public hearing on a request for an extension of the validity of a planned unit development only if, in the determination of the Commission, there is a material factual conflict that has been generated by the parties to the planned unit development concerning any of the criteria set forth in Subsection 2408.11. The hearing shall be limited to the specific and relevant evidentiary issues in dispute.

■ The primary instructions to the Zoning Commission on remand were to review its good cause policies and to determine whether a public hearing was necessary before a good cause determination could be made. The Commission also was required "to determine whether good cause was shown to extend the PUD order." The Commission complied with the

---

4. Section 2408.11 provides:
 For purposes of Paragraph 2408.10(c), an extension of the validity of a planned unit development may be granted by the Zoning Commission for good cause shown if an applicant has demonstrated with substantial evidence one or more of .the following criteria:
 (a) An inability to obtain sufficient project financing for the planned unit development, following an applicant's diligent good faith efforts to obtain such financing, because of changes in economic and market conditions beyond the applicant's reasonable control;

 (b) An inability to secure all required governmental agency approvals for a planned unit development by the expiration date of the planned unit development order because of delays in the governmental agency approval process that are beyond the applicant's reasonable control; or
 (c) The existence of pending litigation or such other condition, circumstance or factor beyond the applicant's reasonable control which renders the applicant unable to comply with the time ·limits of the planned unit development order.

primary instructions by promulgating good cause regulations, and by deciding that no evidentiary hearing was required in this matter. Given the passage of time, and the granting of the fourth and fifth extensions, we cannot fault the Commission for focusing on "whether good cause was shown to extend the PUD order" in response to the fourth and fifth extensions since the second and third extensions had expired by the time the good cause regulations were issued in January 1997, and because the stated reasons for the second and third extension requests were similar to those for the fourth and fifth requests. Nor do we find support in the record for petitioners' argument that the Commission's decision not to hold a hearing on the fourth and fifth extension requests was arbitrary and capricious.

In asking for a hearing and stating their opposition to the Archdiocese's fourth extension request, the petitioners made three arguments: "(1) the subject PUD time extension request does not meet the 'good cause' exception standards; (2) there is no pending litigation evidencing 'good cause' for a time extension; and (3) there have been material factual changes to the Comprehensive Plan and Zoning Regulations which undermine the original PUD approval." Order No. 496–D at 5. Petitioners' arguments to the Commission with respect to their opposition to the fifth extension and their request for a hearing were somewhat different: "(1) there is no nexus between the current litigation, just initiated, and the two years since the prior litigation ended; (2) there is no basis for concluding that market conditions have hampered the Archdiocese from obtaining a tenant; ... (3) there have been changes to the Comprehensive Plan and Zoning Regulations which undermine the original PUD approval"; and (4) "the change in the project developer (not the applicant) constitutes a change of material fact under § 2408.10(b) ...." Order No. 496–E at 3. In their brief on review, petitioners contend, *inter alia*, that "[b]ecause of inconsistent representations made by the appli-

cant [that is, arguing in 1994 and 1995 that market conditions and pending litigation precluded forward movement on the project while simultaneously maintaining that it had the financial capability to complete the project] and the consequent credibility determinations that would have to be resolved, ... [it was] error for the Zoning Commission to refuse to hold a ... hearing on the grounds that there existed no dispute of any material fact." The material factual disputes identified in petitioners' brief on review are: "(1) the existence of substantial changes in the design of the project found by the Mayor's agent and later approved by the Mayor's agent; (2) the impact of the loss of one of the co-applicants to the PUD; and (3) the Zoning Commission's reliance on factors unique to the co-applicant as basis for prior extensions ...."

Moreover, the petitioners call our attention to no affidavits or documentary evidence supporting their allegations of "a material factual conflict." On the other hand, our reading of the record shows that: (1) the first alleged material factual dispute set forth in petitioners' brief apparently was not presented to the Commission in their opposition to the fourth or fifth extensions, and further, the HPRB addressed and approved the design changes at its December 8, 1994 hearing; (2) Order No. 496 never required a co-applicant, and thus, as the Commission found in Order No. 496–E, a change relating to the project developer could not have been a material fact; and (3) the Commission previously had considered the change in market conditions and the pending, ongoing litigation as factors indicating good cause for an extension, and analyzed these factors in Order No. 496–D and 496–E.

■ In addition, we note that § 2408.12 of 11 DCMR leaves the decision as to whether to hold a public hearing on a PUD extension request solely to "the determination of the Commission." We are not persuaded on this record, which re-

flects review and decisions by the Mayor's Agent, the HPRB, the Commission, and the Office of Planning, that the Commission's decision not to hold a public hearing on remand was arbitrary and capricious. Consequently, we conclude that the Commission complied with our remand instructions by developing good cause regulations and by determining that no public hearing was required with respect to the extension requests.

### The Commission's Good Cause Determination

Third and finally, petitioners contend that the Commission erred in granting the extensions of the PUD and in finding good cause for the extensions. Petitioners attack the Commission's finding of good cause on several grounds, including reliance of the Commission on (1) the pending litigation factor; and (2) its own delay in adopting the good cause regulations. They also attack other findings and conclusions, specifically: (1) the presence of K & C Associates was not a material fact with respect to the Commission's approval of the PUD; and (2) significant monetary expenditures already have been made for the project. Furthermore, they assert that the Commission failed to determine whether the changes to the PUD were consistent with changes in the District's Comprehensive Plan and the Zoning Map. The Archdiocese asserts that under this court's standard of limited review, the Commission's findings must be upheld. We agree.

▮▮ First, we defer to an agency's interpretation of its own regulations " 'unless that interpretation is plainly wrong or inconsistent with the regulations or with the statute under which the [Commission] acts.' " *French v. District of Columbia Bd. of Zoning Adjustment*, 658 A.2d 1023, 1032 (D.C.1995) (quoting *Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment*, 634 A.2d 1234, 1242 (D.C.1993) (other citations omitted)). *See also 1330 Connecticut Ave., Inc. v.*

*District of Columbia Zoning Comm'n*, 669 A.2d 708, 714 (D.C.1995) (citations omitted). Second, we do not disturb an agency's findings if there is a finding "on each materially contested issue of fact"; there is substantial evidence in the record to support each factual finding; and "the [agency's] conclusions flow rationally from its findings of fact." *French, supra*, 658 A.2d at 1032 (citations omitted). Third, with respect to an agency's good cause determinations, we said in *Ammerman v. District of Columbia Rental Accommodations Comm'n*, 375 A.2d 1060 (D.C.1977):

> " 'Good cause' depends upon the circumstances of the individual case, and a finding of its existence [or nonexistence] lies largely in the discretion of the officer or court to which the decision is committed." By its very nature, "good cause" requires the evaluation of a number of subtle factors, a task properly given to the administrative agency most experienced in dealing with such factors in the first instance. In the absence of an abuse of the agency's discretion in that evaluation, we are bound by that good cause or lack of good cause determination.

*Id.* at 1063 (citations omitted).

Here, the Commission promulgated good cause regulations which set forth specific factors it may consider as good cause, including pending litigation and changes in economic and market conditions. The Commission was well within its discretion in deciding not to penalize the Archdiocese for the Commission's own delay in promulgating its good cause regulations, and in analyzing the impact of the pending litigation and changes in economic and market conditions on the Archdiocese's ability to move forward with the project. We see no abuse of discretion in its good cause determination. Moreover, we are satisfied that the agency's interpretation of its good cause regulations is not unreasonable and is consistent with its regulations and statute. There is also substantial evidence in the record demonstrating the impact of the

pending litigation on the development of the project; and showing that when it approved the PUD application in 1987, that approval was not conditioned on the resources of K & C Associates, a fact that was reaffirmed in Order No. 496–E. The record before us reveals that the Commission sought and received the recommendations of the Office of Planning concerning "the effect of changes to the Comprehensive Plan, the Zoning regulations and the [Zoning] Map," before granting the fourth and fifth requested extensions of the PUD. In addition, in *Hotel Tabard Inn, supra,* "we conclude[d] that the Zoning Commission adequately considered the amended Comprehensive Plan, [the Dupont Circle Overlay District] regulations, and the [Advisory Neighborhood] recommendations." 661 A.2d at 155 n. 12.

In short, under our standard of limited review, we see no reason to disturb the findings and conclusions of the Commission. The record reveals a finding of fact on each materially contested fact; substantial evidence in the record supports each finding; and the Commission's conclusions flow rationally from its findings of fact. Consequently, "[w]e decline to substitute our judgment for that of the Commission." *Citizens' Coalition Against the Proposed Brookings Office Bldg. v. District of Columbia Zoning Comm'n,* 516 A.2d 506, 513 (D.C.1986) (citing *Rock Creek East Neighborhood League, Inc. v. District of Columbia Zoning Comm'n,* 388 A.2d 450, 451 (D.C.1978)).

Accordingly, for the foregoing reasons, we affirm the orders on review in Nos. 95–AA–502, 98–AA–18 and 98–AA–1021.

*So ordered.*